TIMOTHY S. CORY, ESQ.
Nevada Bar No. 1972
ADAM P. BOWLER, ESQ.
Nevada Bar No. 8383
**TIMOTHY S. CORY & ASSOCIATES**
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone (702) 388-1996
tim.cory@corylaw.us
adam.bowler@corylaw.us

Attorneys for the Debtors

E-filed: February 17, 2010

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>Yakubik, William Joseph, and<br><br>Yakubik, Darcie Ann,<br><br>Debtors | Case No. 09-24688-LBR<br><br>Chapter 11<br><br>**Date: March 22, 2010**<br>**Time: 1:30 p.m.** |

## DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

### I. INTRODUCTION

The Debtors, Joseph and Darcie Yakubik, submit this Disclosure Statement pursuant to §1125 of the Bankruptcy Code (11 U.S.C. §101 et seq.) to all known creditors, equity holders, and parties-in-interest of the Debtors to disclose information to enable them to make an informed decision in exercising their rights to accept or reject the Debtors' Chapter 11 Plan of Reorganization (the "Plan") filed with the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") and attached hereto as **Exhibit 1**.

The information contained in this Disclosure Statement is subject to the approval of the

Bankruptcy Court. Unless specified otherwise, the information and analysis set forth herein is current as of the date of this Disclosure Statement.

The following is a disclosure of all known information deemed to be material, important, and necessary for parties-in-interest to arrive at a reasonably informed decision in exercising their right to vote for the acceptance or rejection of the Plan.

The Debtor provides this Disclosure Statement to all known holders of claims and Allowed Equity Interests in the Debtor. The purpose of this Disclosure Statement is to provide adequate information, as far as is reasonably practicable, to the holders of claims and Allowed Equity Interests so they can make an informed judgment about the Plan.

Before deciding whether to accept or reject the Plan, you should carefully read the contents of this Disclosure Statement and the Plan. The information contained in this Disclosure Statement has not been audited, and therefore, the Debtor does not warrant or represent that the information contained in this Disclosure Statement is completely accurate.

You should not rely upon any representations or other inducements made to secure your acceptance or rejection of the Plan other than contained in this Disclosure Statement or in another disclosure statement approved by the Bankruptcy Court. You should report any such additional representations or inducements to the Bankruptcy Court or to counsel for the Debtors, who will deliver such information to the Bankruptcy Court.

The Plan may have tax consequences to the Debtor and to the holders of claims and Allowed Equity Interests in the Debtor. For this reason, parties in interest may wish to consult their tax advisors regarding the provisions of the Plan and the particular tax consequences applicable to them of the Plan.

The definitions contained in Section 1 of the Debtor's Plan of Reorganization are applicable throughout this Disclosure Statement and are incorporated herein by reference.
/ / /

## II. HISTORY OF THE DEBTORS

Joe Yakubik has been involved in the real estate industry in Las Vegas, Nevada for many years as a buyer, seller, salesperson and investor. In addition, Mr. Yakubik has been involved in several business ventures, most of which involved purchasing and selling land. Over the course of the past few years, the Debtors purchased 15 properties that they currently own. All of these properties are raw land or single family residences. The Debtors reside in one of the properties. The remaining 14 properties are either rented or are being marketed for rent.

Around 2004, Mr. Yakubik embarked on a new business venture. Mr. Yakubik incorporated Mastercraft of Las Vegas, Inc. ("Mastercraft"), singed a dealership agreement with Mastercraft Boat Company and opened a Mastercraft boat dealership in Southern Nevada.

Through the course of the past two years, the economic conditions in Southern Nevada, and the nation, have softened significantly. In particular, the real estate market in Southern Nevada has been especially affected. This decline in real estate values lead to a reduction in the Debtors' income and ability to service the debt on the rental property. In addition, it became difficult to rent the properties and historic rates.

In addition to the softening of the market, various disputes arose with respect to the financing agreements in place with Mastercraft. These disputes result in multiple state court actions, including Textron vs. Mastercraft, et al. (Nevada State Court case no. A587190) and Bank of America vs. Mastercraft et al. (Nevada State Court case no. A590724). Mr. Yakubik is a named party with respect to both of these State Court actions.

In part as a result of the above-referenced State Court actions, Mastercraft filed a voluntary petition under chapter 11 of the Bankruptcy Code in the District of Nevada (Case No. BK-S-09-22500-LBR). As the Mastercraft case progressed, it became apparent the reorganization of Mastercraft would not be possible. Therefore, at the request of the Debtor, the Court entered an order dated September 24, 2009 converting the case to one under chapter 7 of the Bankruptcy

- 3 -

Code. Various creditors of Mastercraft have made claims in this Bankruptcy Proceeding.

As a result of the failure of Mastercraft and the referenced inability of the Debtors to service debt on their rental properties, the Debtors were forced to seek voluntary relief under chapter 11 of the Bankruptcy code on August 12, 2009.

### III. SUMMARY AND MEANS OF IMPLEMENTING THE PROPOSED PLAN

The Plan provides two primary components: (1) the restructure of debt relative to the various rental properties; (2) pro-rata distributions to creditors holding unsecured non-priority claims. The Debtors believe that the Debtors will be able to perform their obligations under the Plan and are providing financial projections regarding such obligations, attached hereto as **Exhibit 2**. As shown in the attached financial projection, the Debtors believe that they will have sufficient cash to fund all plan payments, including the final payment described below.

### IV. GENERAL INFORMATION ON REORGANIZATION PROCEEDINGS

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the rehabilitation and reorganization of financially distressed individuals and entities. The statutory aims of a reorganization proceeding include the following:

(1) preservation of the Debtors' property as a going concern and preservation of any going concern value of the Debtors' business and operations;

(2) avoidance of a forced and destructive liquidation of the Debtors' assets;

(3) the protection of the interest of Creditors, both secured and unsecured; and,

(4) the restructuring of the debts of the Debtors and the finances of the Debtors, such as would enable it to retain those assets necessary to rehabilitate their finances and (at the same time) produce the greatest recovery for its Creditors.

The formulation and confirmation of a plan of reorganization is the principal function of a Chapter 11 case. Such a plan normally includes provisions for: (1) altering and modifying rights of creditors; (2) dealing with the property of the Debtors; (3) paying costs and expenses of administering the Chapter 11 case; and, (4) execution of the plan. The plan may affect the

interests of all parties and Creditors, reject executory contracts, and provide for prosecution or settlement of claims belonging to the Debtors. In order to be confirmed by the Court, the Code requires that there be a finding that the Plan received the votes of certain requisite classes and that the Plan be "fair, equitable, and feasible," as to any dissenting classes of creditors.

In order for a plan to be "feasible" the Bankruptcy Code requires, as a condition to confirmation, that the Bankruptcy Court find that the liquidation of the Debtors or the need for future reorganization is not likely to follow after confirmation. For the purpose of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet their obligations under the Plan. The Debtors reasonably believe that they will be able to make all payments required to be made pursuant to the Plan.

In order for a plan to be "fair and equitable" it must comply with the so-called absolute priority rule. The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before inferior or junior classes may participate in the distribution. The plan must be accepted by the affirmative vote of a majority (in number of creditors holding two-thirds, in amount) of claims filed and allowed by each class, unless adequate provisions are made for the classes of dissenting Creditors. In order to fully understand how a Plan is confirmed, each individual Creditor should check with his or her own attorney and receive full advice on the inter-workings of Sections 507(a), 1111, 1112, 1123, 1124 and 1129 of the Code.

**THE FOREGOING IS A BRIEF SUMMARY OF THE HIGHLIGHTS OF A PLAN AND CONFIRMATION OF SUCH, AND THIS FOREGOING SUMMARY SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN COUNSEL BEFORE MAKING ANY DECISIONS ON A PLAN FILED HEREIN.**

In addition to the above, Section 1125 of the Code requires that there be a post-petition disclosure in the form of a disclosure statement which provides "adequate information" to

Creditors before anyone may solicit acceptances of a Chapter 11 plan.

**THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH SECTION 1125 SO AS TO PROVIDE "ADEQUATE INFORMATION" TO THE CREDITORS IN THIS PROCEEDING. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL AND TO REVIEW ALL OF THE PLEADINGS FILED IN THIS BANKRUPTCY PROCEEDING IN ORDER TO FULLY UNDERSTAND THE DISCLOSURES MADE HEREIN, ANY PLAN OF REORGANIZATION FILED HEREIN, AND ANY OTHER PERTINENT MATTERS IN THIS PROCEEDING. ANY PLAN OF REORGANIZATION WILL BE COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR (OR ANY OTHER PROPONENT OF A PLAN), AND ANY INTELLIGENT JUDGMENT CONCERNING ANY PROPOSED PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE FULL COMPLEXITIES OF ANY PLAN PROPOSED HEREIN.**

The Debtors are suited for, and in need of, the broad protection afforded by Chapter 11. The Debtors should be able to effectuate a reconstruction of their financial condition through a plan of reorganization. The Debtors are proposing a plan of reorganization in accordance with a Plan submitted herewith and will move to solicit approval and acceptance of it by the creditors, but only after there has been a judicial approval of this Disclosure Statement, including any amendments hereto.

## V. LIQUIDATION VALUE OF THE ESTATE'S ASSETS

The Debtor believes that the value of the property to be received under the Plan by each holder of an Allowed Claim or and Allowed Interest is equal to or in excess of any value such holder would receive under chapter 7 of the Bankruptcy Code.

Copies of appraisals of the Debtors' properties are attached hereto as **Exhibit 3**. In the event of the conversion of the Debtors' estate into a chapter 7 bankruptcy proceeding and the subsequent liquidation of its property over a short period of time (and possibly at forced sale values), it is highly possible that a significantly lower value might be received for Debtors' property. In addition, if the Debtors' case were converted to one under Chapter 7, it is likely that

all of the Debtors' assets would be foreclosed upon by holders of Secured Claims – leaving nothing for holders of Unsecured Claims. The Plan proposes total payments of $27,000 to holders of Allowed Unsecured Claims. In addition, the Plan proposes that holders of Allowed Secured Claims shall receive interest on their Allowed Secured Claims at the interest rates as stated. Therefore, the Plan proposes to pay both Secured and Unsecured Creditors more than they would receive in a Chapter 7 liquidation.

## VI. SUMMARY OF ASSETS AND LIABILITIES

The statement of affairs and schedules of assets and liabilities of the Debtors have previously been filed herein, and to the best of the knowledge, information and belief of the Debtors, these statements together with the monthly operating statements which have been filed on behalf of the Debtors, contain an accurate itemization of the Debtors' assets and liabilities prior to filing. The Debtors' post-petition finances are, it feels, accurately reflected in the Monthly Operating Reports consistently filed on behalf of the Debtors since the date of the filing of this petition.

**THE DEBTOR BELIEVES, TO THE BEST OF ITS KNOWLEDGE, INFORMATION AND BELIEF THAT THE ASSETS AND LIABILITIES SET FORTH HEREIN AND ON SAID SCHEDULES CONSTITUTE A FULL AND COMPLETE ESTIMATION OF ALL ASSETS AND LIABILITIES OF THE DEBTOR, AND AMOUNTS THEREOF (EXCLUDING INTEREST, ATTORNEY'S FEES AND ANY OTHER UNKNOWN OR VARIABLE FACTS, BEARING ON THE AMOUNT OF THE LIABILITIES). CREDITORS ARE URGED TO FULLY REVIEW WITH THEIR ATTORNEYS (AND CONSULT WITH THE DEBTOR AND THEIR ATTORNEYS) THE SCHEDULES OF ASSETS AND LIABILITIES FILED HEREIN.**

The Debtors believe that the valuation of their assets, set forth in the schedules of assets and liabilities filed herewith and in monthly post-petition operating reports, is a fair estimate of the book value thereof, if the assets are liquidated in an orderly fashion. These values are supported by an appraisal of the property, conducted by a qualified appraiser, prepared on or around January 18, 2010. Copies of the appraisals are attached hereto as **Exhibit 3**. However, in

the event of the conversion of the Debtors' estate into a chapter 7 bankruptcy proceeding and the subsequent liquidation of its property over a short period of time (and possibly at forced sale values), it is highly possible that a significantly lower value might be received for Debtors' property. Therefore, the Debtors believe that it would achieve the greatest value for its property and recovery for creditors through a Plan of Reorganization, which will be proposed by the Debtors herein.

## VII. CLASSIFICATION OF CLAIMS AND INTERESTS

### CLASSIFICATION OF CLAIMS

<u>Classes of Claims</u>. The Claims of the Creditors are separated into designated Classes based upon the nature of the Claim. The following provisions identify the different Classes of Claims that have been designated for the purposes of this Plan. Pursuant to Bankruptcy Code §1123(a)(1), Administrative Claims under Bankruptcy Code §507(a)(1); Gap Period Claims under Bankruptcy Code §507(a)(2); and Priority Tax Claims under Bankruptcy Code §507(a)(8) are excluded from class designation. The treatment of these Claims is provided in Section 3 of this Plan separately from the treatment of the Claims included in the following designated Classes.

<u>Class One</u>. Class One consists of all Allowed Claims entitled to priority under § 507 of the Bankruptcy Code (except Administrative Claims and Priority Tax Claims). It is estimated that administrative priority claims for professionals will be approximately $100,000.

<u>Classes Two(A) Through Two(M)</u>. Classes Two(A) through Two(N), inclusive, consist of the Allowed Secured Claims against the Debtor. Classes Two(A) through Two(N), inclusive, will sometimes collectively be referred to herein as "Class Two" or "Class 2". References to Class 2 constitute references to each of the Sub-Classes of Class 2. Each Sub-Class of Class 2 shall be a separate Class under this Plan.

<u>Class Three</u>. Class Three consists of all unsecured claims allowed under § 502 of the Bankruptcy Code.

## TREATMENT OF CLAIMS

<u>Treatment of Claims</u>. The treatment of any Claim under this Plan is determined by whether the Claim is an Allowed Claim and by the Class into which such Claim is placed. In order for the Holder of a Claim to participate in this Plan, the Claim must be an Allowed Claim. Only the Holders of Allowed Claims will receive the payments and distributions provided for the various Classes of Claims under this Plan.

<u>Class One</u>. Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date, or the date on which such claim is allowed by a Final Order, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

<u>Class Two</u>. Each Class Two Claim holder will be paid up to the value of the collateral securing its claim as follows: Each class two holder shall the treatment set forth in Section 4.01 to the Plan of Reorganization filed concurrently herewith. Payments shall commence on the last day of the month following the month of confirmation.

<u>Class Three</u>. During the first twelve (12) months of the plan, holders of all Allowed Unsecured Claims will be paid by the Reorganized Debtor their Pro Rata share of monthly installments of $250, commencing on the first day of the first month after the Effective Date. All Allowed Unsecured Claim holders will then be paid their Pro Rata share of monthly payments of $500 for forty eight (48) months. The total amount paid to Allowed Unsecured Claims will total $27,000, distributed over sixty (60) months.

<u>Administrative Claims</u>. The amount of each Allowed Administrative Claim shall be determined using normal procedures for the establishment and verification of Claims. Under the Plan, each holder of an Allowed Administrative Claim will be paid the amount of such Allowed Administrative Claim, in cash, on the Effective Date.

<u>Gap Period Claims</u>. The amount of each Allowed Gap Period Claim shall be determined using normal procedures for the establishment and verification of Claims. Under this Plan, each Holder of an Allowed Gap Period Claim will be paid the amount of such Allowed Gap Period Claim, in cash, on the Effective Date.

Priority Tax Claims. The amount of each Allowed Priority Tax Claim shall be determined using normal procedures for the establishment and verification of Claims. Each holder of a Priority Tax Claim will be paid in full over a period of five years in accordance with Section 1129(a)(9)(C).

Objections to Claims. Any Claim set forth on a Proof of Claim that was filed with the Bankruptcy Court prior to the Bar Date shall be deemed to be an Allowed Claim unless the Debtor, the Committee, or any Creditor or other party in interest files an Objection to the allowance of such Claim, the amount of such Claim, or the classification of such Claim. All Objections to Claims under this Plan, including Objections as to whether a Claim is an Allowed Claim, the amount of any Allowed Claim, and the Class to which any Allowed Claim belongs, shall be determined by the Bankruptcy Court. Unless extended by the Bankruptcy Court, all Objections to Claims in this Plan shall be filed within sixty (60) days after the Effective Date.

Disputed Claims. Notwithstanding any other provisions of this Plan, the Holder of any Disputed Claim will not receive any distributions from the Debtor until the disputed portion of such Claim, or some portion of such disputed amount, is allowed by the Bankruptcy Court.

## VIII. MISCELLANEOUS

### A. Retention of Jurisdiction.

The Court shall retain jurisdiction of this case for the following purposes:

(1)    allowance of compensation and other administrative expenses;

(2)    resolution of objections to claims;

(3)    resolution of all objections, conflicts, controversies or disputes arising out of the sale of assets of the estate and to provide for additional time for sale of any assets if necessary;

(4)    correction of any defect, omission or inconsistency in the Plan, or the order confirming the Plan as may be necessary to carry out the purposes and intent of the Plan;

(5)    modification of the Plan in accordance with the provisions of 11 U.S.C. § 1127;

(6)    resolution of all questions and disputes regarding title to property and resolution of all causes of action, controversies, disputes or conflicts arising out of the Plan, the order confirming the Plan, or any other order issued with respect to the Plan,

including, without limitation, disputes arising out of the failure of the Debtors, any creditor, or other party in interest to perform obligations required under the Plan;

(7)  resolution of requests to close or reopen this case; and,

(8)  assumption or rejection of Executory Contracts which are not discovered or proved to be valid as against the Debtor prior to the Confirmation Date, and allowance of claims for damages as to rejection of such Executory Contracts.

### B. Effect of Confirmation

The Plan provides that the entry of the confirmation order discharges and terminates, as of the Effective Date, all Claims against the Debtors that arose at any time before the confirmation order was entered. The discharge of the Debtors under the Plan will be effective as to any claims against the Debtors, regardless of whether a proof of claim thereof was scheduled or filed, whether the claim is an Allowed Claim or whether the holder thereof has voted to accept or reject the Plan.

### C. Effective Date

The Effective Date is defined in the Plan. Many important events under the Plan occur on or after the Effective Date.

### D. Substantial Confirmation

The Plan will be deemed to be substantially consummated upon the Effective Date.

### E. Reservation of Rights

The filing of the Plan, any statement or provision contained in the Plan, or any action by any party with respect to the Plan, shall not be considered an admission against interest or a waiver of any rights, except as stated in the Plan as finally confirmed. In the event the Plan is not confirmed, the Plan, any statement or provision contained in the Plan may not be used or relied upon in any suit, action, controversy or other proceeding.

### F. Right to Withhold Confirmation Order or Not to Proceed

If there are any impediments or delays in confirming the Plan, the Debtors reserve the rights to withhold the order confirming the Plan or proceed under the Plan until such time as the Plan has been confirmed by the Court and the Effective Date under the Plan has passed.

## IX. RISK FACTORS

In addition to other matters addressed elsewhere in this Disclosure Statement, the Plan involves certain significant risks that should be taken into consideration, including those material risk factors set forth below.

### A. Risk of Non-Payment

Upon the effectiveness of the Plan, the Debtors will have substantial debt. While the projections included herein anticipate that the Debtors will be able to meet their debt service obligations, any forecast of future financial results must be based upon a number of assumptions that are subject to inherent uncertainties and contingencies, many of which are beyond the control of the Debtors. Accordingly, there can be no assurance in this regard that the Debtors will be able to satisfy its debt obligations.

### B. Tax Risks

The federal, state, local and foreign tax consequences of the Plan are complex, and in many areas, uncertain. Holders of Claims are strongly urged to consult their tax advisers for specified reference to the federal, state, local and foreign tax consequences of the Plan with respect to their Claim. The Debtors make no assurances regarding the federal, state, local and foreign tax consequences of the Plan with respect to any Claim.

### C. Risk of Non-Confirmation of the Plan

Even if the requisite acceptances are received, the Plan may not be confirmed by the Bankruptcy Court, which sits as a court of equity and may exercise substantial discretion. Confirmation of the Plan requires, among other things, a finding by the Bankruptcy Court that there will not be a need for further financial reorganization, and that the value of distributions to Classes of dissenting Creditors not be less than the value of distributions such creditors would receive if the Debtors were to liquidated their non-exempt assets under chapter 7 of the Bankruptcy Code. Although the Debtors believe that the Plan will not be followed by a further need for financial reorganization and that dissenting Creditors will receive distributions at least as great as they would receive in a liquidation under chapter 7 of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will conclude that these tests have been met.

Furthermore, the effectiveness of the Plan is subject to certain conditions and there can be no assurance that such conditions will be satisfied.

## X. ACCEPTANCE AND CONFIRMATION

A.   **Voting Procedures**

    1. <u>Generally</u>.

Only those Classes that are impaired under the Plan are entitled to vote to accept or reject the Plan. In that regard, Classes 2 and 3 are impaired under the Plan and are entitled to vote. Classes entitled Priority Tax Claims, Administrative Claims and Disputed Claims are not impaired under the Plan and are deemed to have accepted the Plan without voting. The Debtors reserve the right to supplement this Disclosure Statement (if necessary) and to solicit any of the Classes which may prove to be impaired, as the Reorganization Case develops further.

Ballots will be sent to the known holders of Claims whether or not such Claims are disputed. (Attached hereto as **Exhibit 4** is the form of the Ballot proposed by the Debtors). However, only the holders of Allowed Claims (or Claims that have been temporarily allowed or have been estimated by the Bankruptcy Court), who are impaired are entitled to vote on the Plan. A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection and any appeals are determined. The holders of such Disputed Claims are not entitled to vote on the Plan unless they request that the Bankruptcy Court, pursuant to Bankruptcy Rule 3018, temporarily allow the Claims in appropriate amount solely for the purpose of enabling the holders of such Disputed Claims to vote on the Plan; and the Bankruptcy Court does so.

    2. <u>Incomplete Ballots</u>.

Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will be regarded as a vote for acceptance of the Plan. In addition, unless otherwise indicated, a vote cast by a Person will constitute an acceptance or rejection of the Plan with respect to each Allowed Claim held, directly or indirectly, by such Person.

///

3. <u>Waivers of Defects, Irregularities, etc.</u>

Unless otherwise directed by the Bankruptcy Court, all questions as to validity, form, eligibility (including time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Debtors in their sole discretion, whose determination will be final and binding. As indicated below under "Withdrawal of Ballots", effective withdrawals of Ballots must be delivered to the Debtors prior to the voting deadline. The Debtors reserve the absolute right to contest the validity of such withdrawal. The Debtors also reserves the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or its counsel, be unlawful. The Debtors further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and instructions thereto) by the Debtors, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities have not theretofore been cured or waived) will be invalidated.

4. <u>Withdrawal of Ballots; Revocation.</u>

Any creditor holding an Allowed Claim which is impaired who has delivered a Ballot for or against the acceptance of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Debtors at any time prior to the voting deadline.

A notice of withdrawal, to be valid, must: (i) contain the description of the Claim to which it relates and the amount of such Claim; (ii) be signed by the voting Creditor, in the same manner as the Ballot; and (iii) be received by the Debtor in a timely manner at the address et forth below. As indicated above, the Debtors expressly reserves the right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots which is not received in a timely manner will not be effective to withdraw a previously furnished Ballot.

5. <u>Submission of Ballots.</u>

The forms of Ballot for each of the Classes entitled to vote on the Plan will be sent to all Creditors with a copy of the Disclosure Statement approved by the Bankruptcy Court, the Plan,

- 14 -

and the Appendix of Exhibits. Creditors should read the Ballot carefully. If any Creditor has any questions concerning voting procedures, that Creditor may contact:

>Adam P. Bowler, Esq.
>**TIMOTHY S. CORY & ASSOCIATES**
>8831 West Sahara Avenue
>Las Vegas, Nevada 89117
>(702) 388-1996

Ballot(s) must be returned to:

>Adam P. Bowler, Esq.
>**TIMOTHY S. CORY & ASSOCIATES**
>8831 West Sahara Avenue
>Las Vegas, Nevada 89117
>(702) 388-1996

Ballots must be received by no later than 5:00 p.m. on _____, 2010.

## XI. ALTERNATIVES TO THE PLAN

The Debtors believe that the Plan and the debt restructuring contemplated therein Plan provides the greatest possible recovery to all Creditors. Liquidation will not provide a full return on all Allowed Claims. The Debtors believe that the Plan, as described herein, enables all Creditors to receive payment of their Allowed Claims as quickly as possible.

## XII. HEARING ON CONFIRMATION

The hearing on confirmation of the Plan has been set for _____, 2009, at the hour of 9:30 a.m. before the Honorable Linda B. Riegle, United States Bankruptcy Courthouse, 333 Las Vegas Blvd. South, Las Vegas, Nevada, 89101, on the Third Floor. In addition, all objections must be in writing, filed with the Court, and a copy served on Debtors' counsel no later than _____, 2009. If there are any impediments or delays in confirming the Plan, the Debtor reserves its right to withhold any order confirming the Plan or not proceed under the Plan until such time as the Plan has been confirmed by the Court and no appeals have been filed related to the order confirming the Plan.

A.  **Effect of Confirmation**

The provisions of the Plan shall bind all parties in interest whether or not such parties are impaired under the Plan and whether or not such parties have accepted the Plan

- 15 -

**B.      Consequence of the Failure to Confirm the Plan**

In the event that the requirements for confirmation of the Plan are not satisfied, the Debtor believes that it will be necessary to revise the Plan in order to achieve confirmation or move the Court to convert the case to a case under chapter 7.

DATED this 16th day of February, 2010.

_____
Joseph Yakubik

_____
Darcie Yakubik

**TIMOTHY S. CORY & ASSOCIATES**

_____
Timothy S. Cory
Nevada Bar No. 1972
Adam P. Bowler
Nevada Bar No. 8383
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 388-1996
tim.cory@corylaw.us
adam.bowler@corylaw.us

Attorneys for the Debtors