STACY M. ROCHELEAU, ESQ.                    E-filed on September 15, 2010
Nevada Bar No. 7886
ROCHELEAU LAW GROUP, P.C.
375 N. Stephanie St., Bldg. #2
Henderson, Nevada 89014
stacy@rocheleaulaw.com
Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

IN RE:                                          )   Case No.      BK-S-09-24688-lbr
                                                )   Chapter 11
    YAKUBIK, JOSEPH WILLIAM, and                )
    YAKUBIK, DARCIE ANN                         )   Date:   October 20, 2010
                                                )   Time:  1:30 p.m.
                                                )
_____   )

## MOTION TO SELL REAL PROPERTY

Joseph William Yakubik and Darcie Ann Yakubik, the above-captioned debtors (the "Debtors"), by and through their counsel, hereby submit moves this Court for an order approving the Sale of the Real Property at 4443 Harmon, Las Vegas, Nevada, Free and Clear of Liens, Charges, Interest and Encumbrances Pursuant to 11 U.S.C. §363(b)(1).

This motion is made pursuant to 11 U.S.C. §§ 105 and 363, and Rules 2002(a)(2) and 6004(a) and ( c) of the Federal Rules of Bankruptcy Procedure. This Motion is further based upon the following Memorandum of Points and Authorities, the pleadings, papers, exhibits, the entire case file, and any oral arguments this Court may wish to hear.

DATED this 15th day of September, 2010.

                                 ROCHELEAU LAW GROUP, P.C.


                                 _____
                                 STACY M. ROCHELEAU, ESQ.
                                 Nevada Bar No. 7886
                                 375 N. Stephanie St., Bldg. #2
                                 Henderson, Nevada 89014
                                 stacy@rocheleaulaw.com
                                 Attorneys for Debtors

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    JURISDICTION AND VENUE**

3        1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(B)(1) and

4    1334.  This is a core proceeding pursuant to 28 U.S.C. §157(B)(2)(a).

5        2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6        3.    The statutory predicates for the relief sought herein are §§ 105(a) and 363 of the

7    Bankruptcy Code, and Rules 2002(a)(2) and 6004(a) and ( c) of the Federal Rules of Bankruptcy

8    Procedure.

9    **II.    FACTUAL BACKGROUND**

10       4.    On August 12, 2009 (the "Petition Date"), Joseph Yakubik and Darcie Yakubik (the

11   "Debtors") filed a voluntary petition for relief under chapter  11.

12       5.    On February 17, 2010, Debtors filed a Disclosure Statement [Docket No. 130] and

13   proposed chapter 11 plan [Docket No. 129] (the "Plan").

14       6.    On March 20, 2010, Debtor received an offer to purchase property commonly known

15   as 4443 E. Harmon Avenue, Las Vegas Nevada 89121 (the "Property") for $54,000.  A true and

16   correct copy of the proposed Real Estate Purchase Contract (the "Contract" dated March 20, 2010 is

17   attached as Exhibit "1").

18       7.    The Buyer made an Earnest Money Deposit in the amount of a $1,000 check to

19   Nevada Title Company in connection with the Buyer's offer to purchase the Property.

20       8.    On April 19, 2010, Debtors filed an Amended Disclosure Statement [Docket No.

21   167] (the "Amended Disclosure Statement"), and the Debtors, in anticipation of the sale of the

22   property, did not include the property in the Chapter 11 plan.

23       9.    On April 7, 2010, Wells Fargo Bank, N.A. ("Wells Fargo") filed its Motion for relief

24   from the automatic stay on the Property.

25       10.   The Motion seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2)

26   based on a stated lack of equity in the property.

27

28   Page 2 of 6

1       11.     On May 15, 2010, Debtors filed a Seconded Amended Disclosure Statement (the

2   "Second Amended Disclosure Statement") and Amended Chapter 11 plan (the "Amended Plan").

3       12.     The Debtor listed the value of the Property and building at $60,000. [Docket No. 18,

4   Schedule A].

5       13.     Pursuant to the preliminary title report obtained, the Property is encumbered by two

6   (2) liens currently recorded against the Property:

7               (a)     Deed of Trust recorded June 3, 1994 by Wells Fargo Bank against the

8   property in the amount of $86,912.00; and

9               (b)     Deed of Trust recorded August 26, 1996 by Firstplus Financial, Inc. against

10  the Property in the amount of $25,000.00.

11      14.     An appraisal was obtained on the Property by a Nevada Licensed Appraisal on or

12  about April 7, 2010, stating the value of the Property is $54,000.00.  See Exhibit "2."

13      15.     The contract price is equal to the value of the Property.

14      16.     By way of this motion, the Debtors seek authorization to sell the Property to the

15  proposed Buyer pursuant to the Contract for $54,000.00, free and clear of all interests, charges, liens

16  or encumbrances.

17      17.     All net proceeds of the sale of the property will be used to pay first lien holder Wells

18  Fargo Bank, N.A.

19      18.     Monthly payments have not been made to Wells Fargo Bank, N.A. due to the

20  property remaining vacant for the past six months, which is was mainly due to the poor condition of

21  the property.  As depicted on the initial photograph on the appraisal, and as stated in the appraisal,

22  the subject property has higher typical physical depreciation for the actual age.  The subject property

23  is missing flooring, has some partial drywall repairs, but is not finished and/or painted, has damaged

24  exterior siding, and a damaged roof which is likely leaking.

25      19.     If proposed sale is not approved, the Buyer has agreed to a rent the Property with an

26  Option to purchase which also allows for immediate rent payments to be released to Wells Fargo

27  Bank, N.A.

28

## III.    LEGAL AUTHORITIES

Section 363(b)(1) of the Bankruptcy Code provides for the sale of the Debtor's property as follows:

(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless–

(A) such sale or such lease is consistent with such policy; or
(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease–

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

Thus, pursuant to Section 363(b)(1) of the Bankruptcy Code, the Trustee, after notice and hearing, may sell property of the Debtor, other than in the ordinary course of business. The trustee's application of his sound business judgment in the use, sale or lease of property is subject to great judicial deference. See, e.g., *In re Moore*, 110 B.R. 924 (Bankr. C.D.Cal. 1990); *In re Canyon P'ship,* 55 B.R. 520 (Bankr. S.D.Cal. 1985). In determining whether any sale of assets outside the ordinary course of business should be approved, bankruptcy courts generally consider the following factors:

1.    Whether a sufficient business reason exists for the sale;
2.    Whether the proposed sale is in the best interest of the estate, such that the proposed sale terms should have been properly negotiated and proposed in good faith and the purchaser should have been involved in an "arms-length" transaction with the seller; and
3.    Whether notice of the sale was sufficient.

See *In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (stating that there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business) (citing *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) (stating that the bankruptcy

1    court should consider all salient factors pertaining to the proceeding and, accordingly, act to further

2    the diverse interest of the debtor, creditors and equity holders alike)).

3         The bankruptcy court's evaluation of a proposed sale of assets free and clear of liens requires

4    a finding that the sale must be in the best interest of the estate. See *In re Hunt Energy, Co.*, 48 B.R.

5    472, 485 (Bankr. N.D.Ohio 1985) (citing *Seychelles, P'ship & Genius Corp. v. Banyan Corp.*, 32

6    B.R. 708, 711 (Bankr. N.D.Tex. 1983); *In re Bridges*, 19 B.R. 847, 849 (Bankr. D.Me. 1982)

7    (stating that the sale of personalty subject to the lien of an over-secured, cross-collateralized creditor

8    benefitted the estate by satisfying part of the creditor's claim, thereby releasing other cross-

9    collateralized estate property from that portion of the creditor's secured claim).

10        While a number of terms have been adopted to describe the requirement under Section 363,

11    numerous courts have predicated their approval of a sale under Section 363(f) upon a finding that the

12    proposed price is fair. See *In re Healthco Int'l, Inc.*, 174 B.R. 174, 177 (Bankr. D.Mass. 1994); see

13    also *In re 18th Ave. Dev. Corp.*, 14 B.R. 862, 863 (Bankr. S.D.Fla. 1981) (court approved sale of

14    individual single family homes subject to lien on entire development was approved under Section

15    363(f), finding it was necessary for trustee to ensure "highest possible price was paid").

16        Section 363(f) provides that the Trustee may sell the Debtor's property free and clear under

17    the provisions of subsection (b) only if one of the following conditions is met:

18       (1)    applicable nonbankruptcy law permits sale of such property free and clear of
19             such interest;
       (2)    such entity consents;
20       (3)    such interest is a lien and the price at which such property is to be sold is
            greater than the aggregate value of all liens on such property;
21       (4)    such interest is in bona fide dispute; or
       (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a
22             money satisfaction of such interest.

23        In the instant case, the sales price of the Property is fair as it equals current market value, and

24    given the current condition of the Property, this would appear to be the highest possible price the

25    creditor could hope to sell the Property for if it were permitted to lift the stay and sell the Property at

26    at a foreclosure sale. The sale of this Property pursuant to the attached contract is in the best interest

27    of the estate as it will eliminate a property tax liability and will eliminate the Debtor's annual costs to

28

1  maintain the Property, which is currently vacant, and the estate currently bears a potential liability

2  and continued maintenance costs.  The sale will also eliminate the burden of the Debtors to repair

3  the home to current market standards for rental.  The previous tenant left the home in dis-repair with

4  approximately $25,000 in repairs that the estate cannot afford to advance funds to repair the home at

5  this time.  Pursuant to LR 6004 (b)(3)Attached hereto as Ex. 3 is a copy of a proposed form of sale

6  order;

7       The close of escrow must occur on or before September 30, 2010 as the Buyer is eligible for

8  a tax credit under *The Worker, Homeownership, and Business Assistance Act of 2009* which allows a

9  tax credit of up to $8,000 for qualified first-time home buyers purchasing a principal residence. The

10 Buyer is only eligible as his sales contract was signed by April 30, 2010, but the home purchase

11 must be completed by September 30, 2010 to qualify.  Due to the time parameters under which the

12 buyer must close escrow, the Debtors seek relief from the fourteen (14) day stay imposed by Fed. R.

13 Bankr. P. 6004(h).

14 **IV.**    **CONCLUSION**

15      The Debtors respectfully requests that this Court enter an order granting the relief requested

16 and authorizing the sale of the Property with the benefit of 11 U.S.C. § 363(b)(1), free and clear of

17 all liens, and the proceeds of the sale of the Property be authorized to be released to Wells Fargo

18 Bank, and for such other and further relief as is just and proper.

19

20      DATED this 15th day of September, 2010.

21                         ROCHELEAU LAW GROUP, P.C.

22

23                         STACY M. ROCHELEAU, ESQ.
                        Nevada Bar No. 7886

24                         375 N. Stephanie St., Bldg. #2
                        Henderson, Nevada 89014

25                         stacy@rocheleaulaw.com
                        Attorneys for Debtors

26

27

28                  Page 6 of 6

# EXHIBIT 1



## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions and Earnest Money Receipt)

Date: ____March 20, 2010____

1
2
3
4
5  _____ CHRIS LUCE _____ ("Buyer"), hereby offers to purchase
6  _____ 4443 HARMON, LAS VEGAS, NV  89121 _____ ("Property"),
7  within the city or unincorporated area of _____ LAS VEGAS _____ , County of _____ CLARK _____ ,
8  State of Nevada, A.P.N. # __161-20-312-004_____ for the purchase price of $ 55,000.00
9  ( _____ Fifty-Five Thousand _____ dollars) ("Purchase Price") on the terms
10  and conditions contained herein:
11  BUYER ☒ does -OR- ☐ does not intend to occupy the Property as a residence.
12

| **Buyer's Offer** |
| --- |

13
14  **1.  FINANCIAL TERMS & CONDITIONS:**
15  $ ____1,000.00__  **A. EARNEST MONEY DEPOSIT** ("EMD") is ☐ presented with this offer -OR- ☐ _____
16  _____
17  *(NOTE: It is a felony in the State of Nevada–punishable by up to four years in prison and a $5,000 fine–to write a*
18  *check for which there are insufficient funds. NRS 193.130(2)(d).)*
19
20  $ _____  **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____ . The
21  additional deposit ☐ will -OR- ☐ will not be considered part of the EMD. (Any conditions on the additional
22  deposit should be set forth in Section 28 herein.)
23
24  $ ____54,003.81__  **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A NEW LOAN** ON
25  **THE FOLLOWING TERMS AND CONDITIONS:**
26  ☐ Conventional, ☒ FHA, ☐ VA, ☐ Other (specify) _____ .
27  Interest: ☒ Fixed rate, __6__ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
28  exceed _____ %. Initial monthly payment not to exceed $ _____ , not including taxes, insurance
29  and/or PMI or MIP.
30
31  $ _____  **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE**
32  **FOLLOWING EXISTING LOAN(S):**
33  ☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____
34  Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
35  exceed _____ %. Monthly payment not to exceed $ _____ , not including taxes, insurance and/or PMI or MIP.
36
37  $ _____  **E. BUYER TO EXECUTE A PROMISSORY NOTE SECURED BY DEED OF TRUST PER TERMS**
38  **IN "FINANCING ADDENDUM."**
39
40  $ ____925.00__  **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in cash or certified funds to be paid
41  at Close of Escrow ("COE").
42
43  $ ____55,000.00__  **G. TOTAL PURCHASE PRICE.** (This price DOES NOT include closing costs, prorations, or other fees
44  and costs associated with the purchase of the Property as defined herein.)
45

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____    BUYER(S) INITIALS: _____ / _____

Property Address: _____ 4443 HARMON _____
                             LAS VEGAS, NV  89121         SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**            ©2009 Greater Las Vegas Association of REALTORS®                    Page 1 of 11
Assured Real Estate Inc. 5082 S Jones #105 Las Vegas, NV 89118                    Phone: (702)869-9990     Fax: (866)298-6845                HARMON
Louis Garcia                Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com

2.    **ADDITIONAL FINANCIAL ⟨ ⟩MS & CONTINGENCIES:**

    A.    **NEW LOAN APPLICATION:** Within _____5_____ business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice; (2) authorize ordering of the appraisal (per lender's requirements); and (3) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer

☐ does -OR- ☐ does not

authorize lender to provide loan status updates to Seller's and Buyer's Brokers, as well as Escrow Officer. Buyer agrees to use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

    B.    **CASH PURCHASE:** Within _____N/A_____ business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

    C.    **APPRAISAL:** If an appraisal is required as part of this agreement, or requested by Buyer, and if the appraisal is less than the Purchase Price, the transaction will go forward if (1) Buyer, at Buyer's option, elects to pay the difference and purchase the Property for the Purchase Price, or (2) Seller, at Seller's option, elects to adjust the Purchase Price accordingly, such that the Purchase Price is equal to the appraisal. If neither option (1) or (2) is elected, then Parties may renegotiate; if renegotiation is unsuccessful, then either Party may cancel this Agreement upon written notice, in which event the EMD shall be returned to Buyer.

3.    **SALE OF OTHER PROPERTY:**

    A.    This Agreement
    ☒ **is not -OR-**
    ☐ is contingent upon the sale (and closing) of another property which address is

_____ .

    B.    Said Property
    ☒ **is currently listed**
    ☐ **is not -OR-** ☐ **is**
presently in escrow with _____ .
Escrow Number: _____ . Proposed Closing Date: _____ .

When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer written notice of that fact. Within three (3) days of receipt of the notice, Buyer will waive the contingency of the sale and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.

4.    **FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(E) of this Agreement, all items are transferred in an "AS IS" condition.

    A.    All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s), window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

    B.    The following additional items of personal property: <u>SEE MLS LISTING</u> _____
_____

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____    BUYER(S) INITIALS: _CC_ / _____

Property Address: _____ 4443 HARMON _____
LAS VEGAS, NV   89121    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**          ©2009 Greater Las Vegas Association of REALTORS®          Page 2 of 11

5. **ESCROW:**

   A. **OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after execution of this Agreement ("Opening of Escrow"), at _____**TOWN CENTER**_____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____**DIANNE GOMEZ**_____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement and receipt of the EMD (if applicable). ESCROW HOLDER is instructed to notify the Parties (through their respective Brokers) of the opening date and the Escrow Number.

   B. **EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited per the Earnest Money Receipt Notice and Instructions contained herein

   C. **CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on (date) _____**May 20, 2010**_____ . If the designated date falls on a weekend or holiday, COE shall be the next business day.

   D. **IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation which became effective January 1, 1987, that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

   E. **FIRPTA:** If applicable, Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required. (See 26 USC Section 1445).

6. **TITLE INSURANCE:** Upon COE, Buyer will be provided with the following type of title insurance policy: ☐ CLTA;  ☐ ALTA-Residential; -OR- ☐ ALTA-Extended (including a survey, if required).

7. **PRORATIONS, FEES AND EXPENSES (Check appropriate box):**

   A. **TITLE AND ESCROW FEES:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | N/A |
|---|---|---|---|---|
| Escrow Fees | ☐ | ☐ | ☒ | ☐ |
| Lender's Title Policy | ☐ | ☒ | ☐ | ☐ |
| Owner's Title Policy | ☒ | ☐ | ☐ | ☐ |
| Real Property Transfer Tax | ☒ | ☐ | ☐ | ☐ |
| Other: _____ | ☐ | ☐ | ☐ | ☐ |

   B. **PRORATIONS:**

| TYPE | PAID BY SELLER | PRORATE | N/A |
|---|---|---|---|
| CIC (Common Interest Community) Assessments | ☐ | ☐ | ☒ |
| CIC Periodic Fees | ☐ | ☐ | ☒ |
| SIDs / LIDs / Bonds / Assessments | ☐ | ☐ | ☒ |
| Sewer Use Fees | ☐ | ☒ | ☐ |
| Real Property Taxes | ☐ | ☒ | ☐ |
| Other: _____ | ☐ | ☐ | ☐ |

All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplementals or adjustments that occur after COE will be handled by the parties outside of Escrow.

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____**CHRIS LUCE**_____    BUYER(S) INITIALS: _____

Property Address: _____**4443 HARMON**_____
_____**LAS VEGAS, NV   89121**_____    SELLER(S) INITIALS: _____

**Rev. 6/09**

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

HARMON

C. **INSPECTIONS AND RELATED EXPENSES (See also Section 12):**
Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water) are turned on and supplied to the Property within two (2) business days after execution of this Agreement, to remain on until COE. (It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.)

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|:---:|:---:|:---:|:---:|
| Appraisal | ☒ | ☐ | ☐ | ☐ |
| CIC Capital Contribution | ☐ | ☐ | ☐ | ☒ |
| CIC Transfer Fees | ☐ | ☐ | ☐ | ☒ |
| CLUE Report ordered by Seller | ☐ | ☐ | ☐ | ☒ |
| Fungal Contaminant Inspection | ☐ | ☐ | ☐ | ☒ |
| Home Inspection | ☒ | ☐ | ☐ | ☐ |
| Mechanical Inspection | ☐ | ☐ | ☐ | ☒ |
| Oil Tank Inspection | ☐ | ☐ | ☐ | ☒ |
| Pool/Spa Inspection | ☒ | ☐ | ☐ | ☐ |
| Roof Inspection | ☒ | ☐ | ☐ | ☐ |
| Septic Inspection (requires pumping) | ☐ | ☐ | ☐ | ☒ |
| Septic Lid Removal | ☐ | ☐ | ☐ | ☒ |
| Septic Pumping | ☐ | ☐ | ☐ | ☒ |
| Soils Inspection | ☐ | ☐ | ☐ | ☒ |
| Structural Inspection | ☒ | ☐ | ☐ | ☐ |
| Survey _____ (type) | ☐ | ☐ | ☐ | ☒ |
| Termite/Pest Inspection | ☐ | ☐ | ☐ | ☒ |
| Well Inspection (Quantity) | ☐ | ☐ | ☐ | ☒ |
| Well Inspection (Quality) | ☐ | ☐ | ☐ | ☒ |
| Wood-Burning Device/Chimney Inspection (includes cleaning) | ☐ | ☐ | ☐ | ☒ |
| Other: _____ | ☐ | ☐ | ☐ | ☒ |
| Re-Inspections | ☐ | ☐ | ☒ | ☐ |

If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law.

D. **CERTIFICATIONS:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|:---:|:---:|:---:|:---:|
| Fungal Contaminant | ☐ | ☐ | ☐ | ☐ |
| Roof | ☐ | ☐ | ☐ | ☐ |
| Septic | ☐ | ☐ | ☐ | ☐ |
| Well | ☐ | ☐ | ☐ | ☐ |
| Wood-Burning Device/Chimney Certification | ☐ | ☐ | ☐ | ☐ |
| Other: NONE REQUIRED | ☐ | ☐ | ☐ | ☐ |

The foregoing expenses for inspections and certifications will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty. Notwithstanding the above elections, in the event an inspection reveals problems with any of the foregoing, Buyer reserves the right to require a certification.

E. **SELLER'S ADDITIONAL COSTS AND LIMIT OF LIABILITY:** Seller agrees to pay a maximum amount of $ 500.00 _____ to correct defects and/or requirements disclosed by inspection reports, appraisals, and/or certifications. It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves the right to request additional repairs based upon the Seller's Real Property Disclosure. Items of a general maintenance or

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ CHRIS LUCE _____  BUYER(S) INITIALS: _CL_ / _____

Property Address: _____ 4443 HARMON
LAS VEGAS, NV  89121 _____  SELLER(S) INITIALS: _____ / _____

1 cosmetic nature which do not mater    affect value or use of the Property, which    ted at the time of Acceptance and which
2 are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this section.
3 The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the
4 Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one
5 party.
6
7    **F.    LENDER'S FEES:** In addition to Seller's expenses above, Seller will contribute $ **3,000.00**
8 to Buyer's Lender's Fees and Buyer's Title and Escrow Fees ☒ including -OR- ☐ excluding costs which Seller must pay
9 pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have different appraisal and
10 financing requirements, which will affect the parties' rights and costs under this Agreement.
11
12    **G.    HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
13 Protection Plans that provide coverage to Buyer after COE. Buyer ☐ waives -OR- ☒ requires a Home Protection Plan with
14 **TBD**                                                                                   ☒ Seller -OR- ☐ Buyer will pay for the Home Protection
15 Plan at a price not to exceed $ **350.00**          . **Buyer** will order the Home Protection Plan. Neither Seller nor Brokers make
16 any representation as to the extent of coverage or deductibles of such plans. ESCROW HOLDER is not responsible for
17 ordering the Home Protection Plan.
18
19    **H.    OTHER FEES:** Buyer will also pay $ **350.00**          to Buyer's Broker for **PROCESSING FEE**          .
20
21 **8.    TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
22 tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
23 (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
24 utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the
25 Property may be reassessed after COE which may result in a real property tax increase or decrease.
26
27 **9.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
28 Seller or his authorized agent shall request the CIC documents and certificate listed in NRS 116.4109 (collectively, the "resale
29 package") within two (2) business days of Acceptance and provide the same to Buyer within one (1) business day of Seller's
30 receipt thereof. Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the
31 date of receipt of the resale package. If Buyer does not receive the resale package within fifteen (15) calendar days of
32 Acceptance, this Agreement may be cancelled in full by Buyer without penalty. If Buyer elects to cancel this Agreement
33 pursuant to this section, he must deliver, via hand delivery or prepaid U.S. mail, a written notice of cancellation to Seller or his
34 authorized agent identified in the Confirmation of Representation at the end of this Agreement. Upon such written cancellation,
35 Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW
36 HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package
37 will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.
38
39 **10.    DISCLOSURES: Within five (5) calendar days of Acceptance of this Agreement,** Seller will provide the
40 following Disclosures and/or documents (each of which is incorporated herein by this reference). **Check applicable boxes.**
41    ☐ **Construction Defect Claims Disclosure,** if Seller has marked "Yes" to Paragraph 1(d) of the
42       Seller Real Property Disclosure Form (NRS 40.688)
43    ☐ **Fungal (Mold) Notice Form** (not required by Nevada law)
44    ☒ **Lead-Based Paint Disclosure and Acknowledgment,** required if constructed before 1978 (24 CFR 745.113)
45    ☐ **Methamphetamine Lab Disclosure,** if applicable (NRS 40.770, NRS 489.776)
46    ☐ **Pest Notice Form** (not required by Nevada law)
47    ☐ **Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer**
48    ☐ **Rangeland Disclosure** (NRS 113.065)
49    ☒ **Seller Real Property Disclosure Form** (NRS 113.130)
50    ☐ **Other** (list) _____
51

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:              **CHRIS LUCE**                   BUYER(S) INITIALS: _CL_ / _____
                          **4443 HARMON**
Property Address:          **LAS VEGAS, NV 89121**          SELLER(S) INITIALS: _CW_ / _____

**Rev. 6/09**          ©2009 Greater Las Vegas Association of REALTORS®                          Page 5 of 11

11.    **ADDITIONAL DISCLOSUR**

    A.    **LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NAC 645.640,
__N/A_____ is a licensed real estate agent in the State(s) of _____ , and has the following interest, direct or indirect, in this transaction: ☐ Principal (Seller or Buyer) -OR- ☐ family relationship or business interest: _____ .

    B.    In addition, for **NEW CONSTRUCTION**, to the extent applicable, Seller will provide: Public Offering Statement (NRS 116.4108); Electric Transmission Lines (NRS 119.1835); Public Services and Utilities (NRS 119.183); Initial Purchaser Disclosure (NRS 113); Construction Recovery Fund (NRS 624); Gaming Corridors (NRS 113.070); Water/Sewage (NRS 113.060); Impact Fees (NRS 278B.320); Surrounding Zoning Disclosure (NRS 113.070); FTC Insulation Disclosure (16 CFR 460.16); and Other: _____

    C.    **AIRPORT NOISE:** Buyer hereby acknowledges the proximity of various overflight patterns, airports (municipal, international, military and/or private) and helipads. Buyer also fully understands that existing and future noise levels at this location, associated with existing and future airport operations, may affect the livability, value and suitability of the Property for residential use. Buyer also understands that these airports have been at their present location for many years, and that future demand and airport operations may increase significantly. For further information, contact your local department of aviation or the Federal Aviation Administration.

    D.    **FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, ancestry, handicap or familial status and any other current requirements of federal or state fair housing law.

    E.    In addition, Buyer acknowledges receipt of:
- **Residential Disclosure Guide** (NRS 645.194)
- **Consent to Act**, if applicable (NRS 645.252)
- **Duties Owed by a Nevada Real Estate Licensee** (if one party is unrepresented) (NRS 645.252)
- **For Your Protection - Get Home Inspection** (HUD 92564-CN) For FHA Loans

12.    **BUYER'S DUE DILIGENCE:**

    A.    **DUE DILIGENCE PERIOD:** Buyer shall have _____10_____ calendar days from Acceptance to complete Buyer's Due Diligence. Buyer shall ensure that all inspections and certifications are initiated in a timely manner as to complete the Due Diligence in the time outlined herein. (If utilities are not supplied by the deadline referenced herein or if the disclosures are not delivered to Buyer by the deadline referenced herein, then Buyer's Due Diligence Period will be extended by the same number of calendar days that Seller delayed supplying the utilities or delivering the disclosures, whichever is longer.) During this period Buyer shall have the exclusive right at Buyer's discretion to cancel this Agreement. In the event of such cancellation, unless otherwise agreed herein, the EMD will be refunded to Buyer. If Buyer provides Seller with notice of objections, the Due Diligence Period will be extended by the same number of calendar days that it takes Seller to respond in writing to Buyer's objections. If Buyer fails to cancel this Agreement within the Due Diligence Period (as it may be extended), Buyer will be deemed to have waived the right to cancel under this section.

    B.    **PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to have non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____CHRIS LUCE_____    BUYER(S) INITIALS: __CL__ / _____
                        4443 HARMON
Property Address: _____LAS VEGAS, NV  89121_____    SELLER(S) INITIALS: _____ / _____

**Rev. 6/09**

©2009 Greater Las Vegas Association of REALTORS®
Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

C.    **PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5) business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such exception removed or to correct each such other matter as aforesaid, Buyer shall have the option to: (a) terminate this Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."

**13.    WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of the Property within _____5_____ calendar days prior to COE to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and improvements are in the same general condition as when this Agreement was signed by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on. If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.

**14.    DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, parking permits (if freely transferable), gate transponders and garage door opener/controls outside of Escrow, upon COE. Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☒ COE -OR- ☐ _____. In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser and shall be liable to Buyer for the sum of $ **N/A**_____ per calendar day in addition to Buyer's legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

**15.    RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift to Buyer.

**16.    ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable by Buyer.

**17.    CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein).

**18.    DEFAULT:**
    A.    **MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through GLVAR. Not withstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply.

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____CHRIS LUCE_____    BUYER(S) INITIALS: _____

Property Address: _____4443 HARMON_____    SELLER(S) INITIALS: _____
                                 LAS VEGAS, NV   89121

**Rev. 6/09**    ©2009 Greater Las Vegas Association of REALTORS®    Page 7 of 11

1    B.    IF BUYER DEFAUL   If Buyer defaults in performance under     Agreement, Seller shall have one of
2    the following legal recourses against Buyer (check one only):

3    ☐ As Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties
4    agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate
5    of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional
6    deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW
7    HOLDER to Buyer.
8                                                    *-OR-*

9    ☐ Seller shall have the right to recover from Buyer all of Seller's actual damages that Seller may suffer as a result of
10   Buyer's default including, but not limited to, commissions due, expenses incurred until the Property is sold to a
11   third party and the difference in the sales price.
12
13   C.    IF SELLER DEFAULTS: If Seller defaults in performance under this Agreement, Buyer reserves all legal
14   and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual
15   damages incurred by Buyer due to Seller's default.
16

## Instructions to Escrow

17   **19.    ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy,
18   Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except
19   losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are
20   made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is
21   entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such
22   documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their
23   several claims and rights among themselves. Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER
24   shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall
25   not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor
26   as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with
27   any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein.
28   ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents
29   received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event
30   an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise
31   compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur
32   in said action, shall be the responsibility of the parties hereto.
33
34   **20.    UNCLAIMED FUNDS:** In the event that funds from this transaction remain in an account, held by ESCROW
35   HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada
36   Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge
37   shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation.
38   ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the
39   funds are held by ESCROW HOLDER.
40

## Brokers

41   **21.    BROKER FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay
42   Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum or
43   percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing
44   and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if
45   Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal
46   recourse against Seller for any commission due.
47
48   **22.    WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers
49   or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____ BUYER(S) INITIALS: _____ _LL_ ; _____
                                                4443 HARMON
Property Address: _____ LAS VEGAS, NV   89121 _____ SELLER(S) INITIALS: _____ ; _____
**Rev. 6/09**                ©2009 Greater Las Vegas Association of REALTORS®                        Page 8 of 11
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                HARMON

1 or warranties, unless expressly stated herein. Buyer agrees to satisfy himself, as to __ condition of the Property, prior to COE.
2 Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to
3 make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims
4 against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c)
5 environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's
6 proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to
7 Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to
8 conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is
9 limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.
10

## Other Matters

11 **23.   DEFINITIONS: "Acceptance"** means the date that both parties have consented to and received a final, binding
12 contract by affixing their signatures to this Agreement and all counteroffers. **"Agent"** means a licensee working under a Broker
13 or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and
14 addenda. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the
15 Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real
16 estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means
17 a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means
18 Common Interest Community (formerly known as **"HOA"** or homeowners associations). **"CIC Capital Contribution"** means
19 a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. **"CIC Transfer Fees"**
20 means the administrative service fee charged by a CIC to transfer ownership records. **"CLUE"** means Comprehensive Loss
21 Underwriting Exchange. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"**
22 means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means
23 personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or
24 mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money
25 deposit. **"Escrow Holder"** means the neutral party that will handle the escrow. **"FHA"** is the U.S. Federal Housing
26 Administration. **"GLVAR"** means the Greater Las Vegas Association of REALTORS®. **"IRC"** means the Internal Revenue
27 Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada
28 Administrative Code. **"NRS"** means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller.
29 **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means
30 Pacific Standard Time, and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title
31 Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"**
32 means delivery to the party or the party's agent. **"Seller"** means one or more individuals or the entity that is the owner of the
33 Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance.
34 **"USC"** is the United States Code. **"VA"** is the Veterans Administration.
35
36 **24.   DELIVERY, FACSIMILE, COPIES AND NOTICES:**
37     **A.**   Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for
38 Seller or Buyer if represented. This Agreement may be signed by the parties on more than one copy, which, when taken
39 together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.
40
41     **B.**   Except as otherwise provided in Section 9, when a Party wishes to provide notice as required in this
42 Agreement, such notice shall be sent regular mail, personal delivery, by facsimile, overnight delivery and/or by email to the
43 Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read
44 receipt confirmed in the case of email. Any cancellation notice shall be contemporaneously faxed to Escrow.
45
46 **25.   IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
47 electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
48 to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
49
50 **26.   OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement
51 shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This
52 Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and
53 intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties
54 agree that the county and state in which the Property is located is the appropriate forum for any action relating to this

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____     BUYER(S) INITIALS: _CL_ : _____

Property Address: _____ 4443 HARMON
LAS VEGAS, NV  89121 _____     SELLER(S) INITIALS: _R_ : _____

1  Agreement. Should any party hereto     ain counsel for the purpose of initiating     ion to enforce or prevent the breach of
2  any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing
3  party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorneys fees and costs incurred by
4  such prevailing party.
5
6  **THIS IS A LEGALLY BINDING CONTRACT.** All parties are advised to seek independent legal and tax advice to review
7  the terms of this Agreement.
8
9  **NO REAL ESTATE BROKER/AGENT MAY SIGN FOR A PARTY TO THIS AGREEMENT UNLESS THE**
10 **BROKER OR AGENT HAS A PROPERLY EXECUTED POWER OF ATTORNEY TO DO SO.**
11
12 **THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®**
13 **(GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY**
14 **PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO**
15 **ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN**
16 **APPROPRIATE PROFESSIONAL.**
17
18 This form is available for use by the real estate industry. It is not intended to identify the user as a REALTOR®.
19 REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL
20 ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
21
22 **27.    ADDENDUM(S) ATTACHED:**_____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 **28.    ADDITIONAL TERMS:** _____
31 _____
32 _____
33 _____
34 _____
35 _____
36 _____
37 _____
38 _____
39 _____
40 _____
41 _____

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____  BUYER(S) INITIALS: _CL_ / _____

                           4443 HARMON

Property Address: _____ LAS VEGAS, NV  89121 _____  SELLER(S) INITIALS: _d_ / _____

©2009 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          HARMON

## Earnest Money Receipt

1
2  BUYER'S AGENT ACKNOWLEDGES RECEIPT FROM BUYER HEREIN of the sum of $ 1,000.00
3  evidenced by ☐ Cash,   ☐ Cashier's Check, ☒ Personal Check, or ☐ Other _____
4  payable to TOWN CENTER _____ . Upon Acceptance, Earnest Money to be deposited within ONE (1) business
5  day, with ☒ Escrow Holder, ☐ Buyer's Broker's Trust Account, - OR - ☐ Seller's Broker's Trust Account
6
7  Date: 03/20/2010 _____  Signed: _____ Buyer's Agent.
8                                          Lou Garcia
9

## Buyer's Acknowledgement of Offer

10
11  **Upon Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and**
12  attachments.
13
14  _____   CHRIS LUCE _____ _____ __:___ ☐ AM ☐ PM
15  Buyer's Signature                     Buyer's Printed Name       Date      Time
16
17  _____ _____ _____ __:___ ☐ AM ☐ PM
18  Buyer's Signature                     Buyer's Printed Name       Date      Time
19
20  **Seller must respond by: __5__ ☐ AM ☒ PM on (month) ___March___ , (day) ___31___ , (year) 2010 . Unless this**
21  **Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and**
22  **time, this offer shall lapse and be of no further force and effect.**
23
24  Confirmation of Representation: The Buyer is represented in this transaction by:
25
26  Buyer's Broker: CHARLLOTE YAKUBIK _____   Agent's Name: Lou Garcia _____
27  Company Name: Assured Real Estate _____   Office Address: 5052 S. JONES #105 LAS VEGAS NV 89
28  Phone: (702)203-1120 _____   Fax: (702)463-2459 _____
29  Email: LOU.GARCIA@ASSUREDNV.COM _____
30
31

## Seller's Response

32
33  ☒ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement,
34  and all signed addenda, disclosures, and attachments.
35  ☐ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.
36  ☐ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein is **not** accepted.
37
38  _____   JOE YAKUBIK _____ _____ __:___ ☐ AM ☐ PM
39  Seller's Signature                    Seller's Printed Name      Date      Time
40
41
42  _____ _____ _____ __:___ ☐ AM ☐ PM
43  Seller's Signature                    Seller's Printed Name      Date      Time
44
45  Confirmation of Representation: The Seller is represented in this transaction by:
46
47  Seller's Broker: Charllote Yakubik _____   Agent's Name: Lou Garcia _____
48  Company Name: ASSURED REAL ESTATE _____   Office Address: 5052  S. JONES SUITE 105
49  Phone: (702)868-0900 _____   Fax: (702)463-2459 _____
50  Email: lou.garcia@assurednv.com _____

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a**
**particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: _____ CHRIS LUCE _____   BUYER(S) INITIALS: _LL_ ; _____
                         4443 HARMON
Property Address: _____ LAS VEGAS, NV  89121 _____   SELLER(S) INITIALS: _____ ; _____

**Rev. 6/09**                ©2009 Greater Las Vegas Association of REALTORS®                Page 11 of 11

APR-15-2010-THU 02:40 PM

04/15/2010 THU 11:52 FAX CO...1

@002/002



# COUNTER OFFER
## NO. __1__

ATTENTION: _____JOSEPH YAKUBIK_____    COMPANY: _____ASSURED REAL ESTATE_____
(Agent)                                                    (Name)

The [ ] Offer [X] Counter Offer made by: [ ] Seller [X] Buyer _____CHRIS LUCE_____
(Name)
4443 HARMON
to [X] Buy [ ] Sell the real property commonly known as: _____Las Vegas, NV  89121_____

dated: ____March 20, 2010____ is not accepted in its present form, but the following Counter Offer
is hereby submitted:
____THE SALE PRICE TO BE $54,000.00____

_____

_____

_____

_____

_____

_____

OTHER TERMS: All other terms to remain the same as original Residential Purchase Agreement plus terms
agreed to in Counter Offer(s) No. _N/A_ .
EXPIRATION: [ ] Buyer [X] Seller must respond by: __5__ [ ] AM [X] PM on (month)____April____,
(day) ____16____, (year) ____2010____. Unless this Counter Offer is accepted by execution below
and delivered to the [ ] Buyer's [ ] Seller's Broker before the above date and time, this Counter Offer shall
lapse and be of no further force and effect.

Date: 04/15/2010

[X] Buyer [ ] Seller CHRIS LUCE                                    Signature

Time: _____

[ ] Buyer [ ] Seller                                                Signature

The undersigned [ ] Buyer [✓] Seller hereby:
[✓] _____ accepts the Counter Offer;
_____ accepts the terms of this Counter Offer subject to the attached Counter Offer No. _____; or
_____ rejects the Counter Offer.

Date: 04/15/2010

[ ] Buyer [X] Seller JOSEPH W E YAKUBIK                          Signature

Time: _____

[ ] Buyer [ ] Seller                                                Signature

Counter Offer Rev. 5/05                                © 2006 Greater Las Vegas Association of REALTORS®

Assured Real Estate, Inc 5052 S Jones #105 Las Vegas, NV 89118
Phone: (702)868-0900      Fax: (866)248-6545      Louis Gwoln                              HARMON
Produced with ZipForm™ by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# EXHIBIT 2



**APEX**
**APPRAISAL**

2855 St Rose Parkway, Suite #100-13   Office: (702) 228-0028
Henderson, NV. 89052                        Fax:     (702) 870-7525

# INVOICE

| INVOICE NUMBER |
|---|
| 9627C |

| DATE |
|---|
| 04/09/2010 |

**REFERENCE**

| | |
|---|---|
| Internal Order #: | 9627C |
| Lender Case #: | |
| Client File #: | 9627C |
| Main File # on form: | 9627C |
| Other File # on form: | YAKUBIK |
| Federal Tax ID: | 20-2899376 |
| Employer ID: | |

**TO:**

YAKUBIK, JOSEPH

| | | |
|---|---|---|
| Telephone Number: | | Fax Number: |
| Alternate Number: | | E-Mail: |

## DESCRIPTION

| | | |
|---|---|---|
| **Lender:** YAKUBIK, JOSEPH | | **Client:** YAKUBIK, JOSEPH |
| **Purchaser/Borrower:** N/A | | |
| **Property Address:** 4443 E. HARMON AVENUE | | |
| **City:** LAS VEGAS | | |
| **County:** CLARK | **State:** NV | **Zip:** 89121-6545 |
| **Legal Description:** EL ENCANTO UNIT #4B  PLAT BOOK 14 PAGE 28 LOT 4 BLOCK 14 | | |

## FEES — AMOUNT

| | AMOUNT |
|---|---|
| DRIVE BY APPRAISAL  (discounted for multiple orders) | 250.00 |
| **SUBTOTAL** | 250.00 |

## PAYMENTS — AMOUNT

| | AMOUNT |
|---|---|
| Check #:       Date:       Description: | |
| Check #:       Date:       Description: | |
| Check #:       Date:       Description: | |
| **SUBTOTAL** | |

| DUE AT CLOSE OF ESCROW OR WITHIN 30 DAYS OF APPRAISAL | **TOTAL DUE** | $ | 250.00 |
|---|---|---|---|



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
4443 E. HARMON AVENUE
EL ENCANTO UNIT #4B  PLAT BOOK 14 PAGE 28 LOT 4 BLOCK 14
LAS VEGAS, NV  89121-8545

### FOR:
YAKUBIK, JOSEPH

### AS OF:
04/07/2010

### BY:
APEX  APPRAISAL
702-228-0028

Apex Appraisal (702) 228-0028

Main File No. 9627Cl Page #2

YAKUBIK

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No. 9627C

**SUBJECT**

| Property Address: 4443 E. HARMON AVENUE | City: LAS VEGAS | State: NV | Zip Code: 89121-6545 |

County: CLARK    Legal Description: EL ENCANTO UNIT #4B  PLAT BOOK 14 PAGE 28 LOT 4 BLOCK 14

Assessor's Parcel #:   161-20-312-004

Tax Year: 2010    R.E. Taxes: $ 1,104.69    Special Assessments: $ 0.00    Borrower (if applicable):   N/A

Current Owner of Record:  YAKUBIC    Occupant: ☐ Owner ☐ Tenant ☒ Vacant    ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe) N/A    HOA: $ N/A    ☐ per year ☐ per month

Market Area Name:   EL ENCANTO UNIT #4B    Map Reference: 29820    Census Tract: 0017.14

**ASSIGNMENT**

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach    (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use:  TO DETERMINE MARKET VALUE AS OF 04/07/2010 FOR A BANKRUPTCY PROCEEDING.

Intended User(s) (by name or type):  JOSEPH YAKUBIK ,COUNCIL, AND ASSIGNEE'S.

Client:   YAKUBIK, JOSEPH    Address:  4443 E. HARMON AVENUE LAS VEGAS, NV 89121

Appraiser:   CARL BASSETT    Address:  2855 ST. ROSE PKWY #100-13, HENDERSON, NV 89052

**MARKET AREA DESCRIPTION**

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | | Change in Land Use |
|---|---|---|---|---|---|---|---|
| Built up: | ☐ Over 75% ☒ 25-75% ☐ Under 25% | | PRICE | AGE | One-Unit | 86 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 80 | $(000) | (yrs) | 2-4 Unit | 2 % | ☐ Likely * ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant 20 | 95 Low 0 | | Multi-Unit | 8 % | * To: |
| Demand/supply: | ☐ Shortage ☒ In Balance ☒ Over Supply | ☒ Vacant (0-5%) | 249 High 57 | | Comm'l | 4 % | |
| Marketing time: | ☒ Under 3 Mos. ☐ 3-6 Mos. ☐ Over 6 Mos. | ☒ Vacant (>5%) | 180 Pred 20-40 | | | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends):    THE NEIGHBORHOOD APPEARS TO
BOUND TO THE NORTH BY FLAMINGO, THE SOUTH BY TROPICANA, EAST BY NELLIS, AND WEST BY THE 95 FREEWAY. THE SUBJECT IS
LOCATED WITHIN 2 MILES OF SHOPPING, SCHOOLS AND OTHER AMENITIES. THERE ARE PARKS & PUBLIC RECREATION FACILITIES IN THE
AREA. EMPLOYMENT STABILITY IS BELOW NATIONAL AVERAGES.  THE NEIGHBORHOOD IS APPROXIMATELY 20-30 MINUTES FROM DOWNTOWN
LAS VEGAS AND 20-30 MINUTES FROM THE LAS VEGAS BLVD WHICH ARE BOTH  MAJOR EMPLOYMENT CENTERS.

SEE ATTACHED ADDENDUM FOR MARKET CONDITIONS.

**SITE DESCRIPTION**

Dimensions:  SEE PLAT MAP APPROX 70 X 115    Site Area: 8,165 Sq.Ft.

Zoning Classification:   (R-1)    Description:  SINGLE FAMILY RESIDENTIAL(R-1)

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown    Have the documents been reviewed? ☐ Yes ☒ No    Ground Rent (if applicable) $        /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date:   SINGLE FAMILY RESIDENTIAL    Use as appraised in this report:  SINGLE FAMILY RESIDENTIAL

Summary of Highest & Best Use:    THE SUBJECT IS A SINGLE FAMILY HOME LOCATED IN A RESIDENTIAL NEIGHBORHOOD.  WHILE COMMERCIAL
DEVELOPING IS LOCATED WITHIN 2 MILES OF THE SUBJECT IT APPEARS THAT THE NEIGHBORHOOD WILL STAY RESIDENTIAL, WITH THE
POSSIBILITY OF A MIXED ZONE IN THE FUTURE (MULTI-FAMILY RESIDENTIAL).

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | APPEARS LEVEL |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | NEVADA ENERGY | Street | ASPHALT | ☒ | ☐ | Size | TYPICAL FOR THE AREA |
| Gas | ☒ | ☐ | SOUTHWEST GAS | Curb/Gutter | CONCRETE | ☒ | ☐ | Shape | IRREGULAR |
| Water | ☒ | ☐ | CITY | Sidewalk | CONCRETE | ☒ | ☐ | Drainage | APPEARS ADEQUATE |
| Sanitary Sewer | ☒ | ☐ | CITY | Street Lights | STEEL/TIMED | ☒ | ☐ | View | NEIGHBORHD |
| Storm Sewer | ☒ | ☐ | CITY | Alley | NONE/TYPICAL | | | | |

Other site elements: ☐ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X    FEMA Map # 32003C2580E    FEMA Map Date  9/27/2002

Site Comments:   THE SUBJECT IS LOCATED IN A OLDER NEIGHBORHOOD BUILT IN THE 1960'S & 1970'S.  THE NEIGHBORHOOD HAS MASONRY
BLOCK WALLS FOR ALL BACK YARDS.  THE SITE IMPROVEMENTS APPEAR TO BE SIMILAR TO MARKET AREA STANDARDS.

**DESCRIPTION OF THE IMPROVEMENTS**

| General Description | Exterior Description | | Foundation | | Basement ☐ None | Heating | |
|---|---|---|---|---|---|---|---|
| # of Units 1  ☐ Acc.Unit | Foundation | CONCRETE/AVG | Slab | | Area Sq. Ft. N/A | Type | FAU |
| # of Stories 1 | Exterior Walls | WOOD/POOR | Crawl Space | | % Finished | Fuel | GAS |
| Type ☒ Det. ☐ Att. | Roof Surface | SHINGLE/POOR | Basement | | Ceiling | | |
| Design (Style) 1 STORY | Gutters & Dwnspts. | NONE/TYPICAL | Sump Pump ☐ | | Walls | Cooling | |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | Window Type | VINYL/INSUL/AV | Dampness ☐ | | Floor | Central | x |
| Actual Age (Yrs.) 37 YEARS | Storm/Screens | MESH/AVG - | Settlement | | Outside Entry | Other | |
| Effective Age (Yrs.) 37 YEARS | | | Infestation | | | | |

| Interior Description | | Appliances | Attic ☒ None | Amenities | Car Storage | ☐ None |
|---|---|---|---|---|---|---|
| Floors | BARE FLOOR/AG | Refrigerator ☐ | Stairs ☐ | Fireplace(s) # 1 | Woodstove(s) # | Garage  # of cars ( 2  Tot.) |
| Walls | PAINTED/FAIR | Range/Oven ☒ | Drop Stair ☐ | Patio CVRD | | Attach. 2  CAR |
| Trim/Finish | WOOD/FAIR | Disposal ☒ | Scuttle ☐ | Deck ☒ N/A | | Detach. |
| Bath Floor | BARE FLOOR/AVG | Dishwasher ☒ | Doorway ☐ | Porch COVERED | | Blt.-In |
| Bath Wainscot | TILE/POOR | Fan/Hood ☒ | Floor ☐ | Fence BLOCK WALL | | Carport |
| Doors | WOOD/AVG - | Microwave ☐ | Heated ☐ | Pool INGROUND | | Driveway |
| | | Washer/Dryer ☐ | Finished ☐ | | | Surface CONCRETE |

Finished area above grade contains:    5  Rooms    3  Bedrooms    2  Bath(s)    1,187  Square Feet of Gross Living Area Above Grade

Additional features:    See attached addenda.

Describe the condition of the property (including physical, functional and external obsolescence):    THE SUBJECT HAS HIGHER TYPICAL PHYSICAL DEPRECIATION
FOR ACTUAL AGE. THE SUBJECT IS MISSING FLOORING, IT HAS SOME PARTIAL DRYWALL REPAIR BUT IS NOT FINISHED AND OR PAINTED,
DAMAGED EXTERIOR SIDING, AND A DAMAGED ROOF WHICH IS LIKLEY LEAKING.  THE APPRAISER IS NOT TRAINED AS A HOME INSPECTOR
AND DOESNT WARRENT CONDITION OR UTILITY.  THE CONDITION IS CONSIDERED TO BE FAIR WHICH IS LESS THAN AVERAGE.

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 9627C

**TRANSFER HISTORY**

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s):  COUNTY RECORDERS/ GLVAR MLS

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing:  THERE ARE NO SALES OF THE SUBJECT |
|---|---|
| Date:      SOLD 09/30/2002 | NOTED WITHIN THE PAST 36 MONTHS LOCAL "GLVAR MLS" AND CLARK COUNTY RECORDERS OFFICE. A |
| Price:      $102,000 | 36 MONTH SALES HISTORY WAS PROVIDED FOR THE COMPARABLE SALES AS WELL. |
| Source(s): COUNTY RECORDER | |
| 2nd Prior Subject Sale/Transfer | |
| Date:      NO OTHER SALES NOTED | |
| Price:      IN THE PAST 36 MONTHS | |
| Source(s): COUNTY RECORDER | |

**SALES COMPARISON APPROACH TO VALUE (if developed)** [ ] The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4443 E. HARMON AVENUE | 4527 HARMON CIRCLE | | 4802 LANA DRIVE | | 4186 OXNARD CIRCLE | |
| | LAS VEGAS, NV 89121-6545 | LAS VEGAS | | LAS VEGAS | | LAS VEGAS | |
| Proximity to Subject | | 0.80 miles E | | 0.49 miles E | | 0.38 miles SW | |
| Sale Price | $              N/A | $              42,000 | | $              58,000 | | $              55,000 | |
| Sale Price/GLA | $           /sq.ft. | $     36.08 /sq.ft. | | $     46.77 /sq.ft. | | $     40.03 /sq.ft. | |
| Data Source(s) | CNTY/ MLS | CNTY RCRDR/ MLS # 1000742 | | CNTY RCRDR/ MLS # 1000898 | | CNTY RCRDR/ MLS # 985076 | |
| Verification Source(s) | APPRAISAL | DOC #2010012802642 | | DOC#2010033100525 | | DOC#2010011902960 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | CASH | | CASH | | CASH | |
| Concessions | N/A | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Date of Sale/Time | N/A | 01/28/2010- 5 D | | 03/31/2010- 12 D | | 01/19/2010- 69 D | |
| Rights Appraised | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Location | BUSY ROAD | OFF BUSY ROAD | | SUBURBAN NGHBR | | FEE SIMPLE | |
| Site | 8,165 Sq.Ft. | 11,248 SQ FT | | 6,000 SQ FT | -5,000 | 8,250 SQ FT | |
| View | NEIGHBORHD | NEIGHBORHOOD | | NEIGHBORHOOD | | NEIGHBORHOOD | |
| Design (Style) | 1 STORY | 1 STORY | | 1 STORY | | 1 STORY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Age | 37 YEARS | 49 YEARS | | 38 YEARS | | 39 YEARS | |
| Condition | FAIR | FAIR | | FAIR | | FAIR | |
| Above Grade | Total  Bdrms  Baths | Total  Bdrms  Baths | | Total  Bdrms  Baths | | Total  Bdrms  Baths | |
| Room Count | 5     3     2 | 5     2     1 | +4,000 | 6     4     2 | | 5     3     2 | |
| Gross Living Area | 1,187 sq.ft. | 1,164 sq.ft. | 0 | 1,240 sq.ft. | -1,060 | 1374 sq.ft. | -3,740 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | NO POOL | NONE | | NONE | | NONE | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CENTRAL | FAU/CENTRAL | | FAU/CENTRAL | | FAU/CENTRAL | |
| Energy Efficient Items | INSUL WNDWS | INSUL WNDWS | | INSUL WNDWS | | INSUL WNDWS | |
| Garage/Carport | 2 CAR GARAGE | NONE | +6,000 | 1 CAR GARAGE | +3,000 | 2 CAR GARAGE | |
| Porch/Patio/Deck | CVRD PATIO | PATIO | +500 | CVRD PATIO | | CVRD PATIO | |
| AMENITIES | POOL | POOL | | STANDARD | +3,000 | STANDARD | +3,000 |
| REPAIRS | REPAIRS NEEDED | REPAIRS NEEDED | | REPAIRS NEEDED | | REPAIRS NEEDED | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 10,500 | [ ] + [X] - $ | -60 | [ ] + [X] - $ | -740 |
| Adjusted Sale Price | | Net    25.0  % | | Net    0.1  % | | Net    1.3  % | |
| of Comparables | | Gross  25.0  % $ | 52,500 | Gross  20.8  % $ | 57,940 | Gross  12.3  % $ | 54,260 |

Summary of Sales Comparison Approach          See attached addenda.

**SALES COMPARISON APPROACH**

Indicated Value by Sales Comparison Approach $   54,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE          3/2007

**GP RESIDENTIAL**

# RESIDENTIAL APPRAISAL SUMMARY REPORT

| COST APPROACH TO VALUE (if developed)   ☒ The Cost Approach was not developed for this appraisal. |
|---|

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   THE COST APPROACH WAS NOT ORDERED BY THE CLIENT. ITS CONTRIBUTORY VALUE IS LIMITED BECAUSE THE HOME WAS NOT INSPECTED AND THE DEPRECIATION IS NOT SPECIFIC. TYPICALLY WITH AN OLDER HOME, THE SALES COMPARISON APPROACH IS SUFFICIENT IF SALES EXIST. THE COST APPROACH CANNOT ACCURATELY DEPICT MARKET VALUE.

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|
| Source of cost data: | DWELLING | Sq.Ft. @ $ | =$ |
| Quality rating from cost service:     Effective date of cost data: | | N/A Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| REMAINING ESTIMATED LIFE EXPECTANCY IS 20-25 YEARS. AN | | | =$ |
| ESTIMATE OF THE TOTAL ECONOMIC LIFE WITH ROUTINE | Garage/Carport | Sq.Ft. @ $ | =$ |
| MAINTENANCE IS 60 YEARS. | Total Estimate of Cost-New | | =$ |
| | Less        Physical | Functional | External |
| | Depreciation | | =$( |
| | Depreciated Cost of Improvements | | =$ |
| | "As-Is" Value of Site Improvements | | =$ |
| | | | =$ |
| | | | =$ |
| Estimated Remaining Economic Life (if required):            20 Years | INDICATED VALUE BY COST APPROACH | | =$ |

**INCOME APPROACH**

| INCOME APPROACH TO VALUE (if developed)   ☒ The Income Approach was not developed for this appraisal. |
|---|
| Estimated Monthly Market Rent $   N/A   X Gross Rent Multiplier   N/A   = $      Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM): TYPICALLY HOMES IN THIS SINGLE FAMILY NIEGHBORHOOD AREA NOT PURCHASED FOR THEIR INCOME ABILITY.

**PUD**

| PROJECT INFORMATION FOR PUDs (if applicable)   ☐ The Subject is part of a Planned Unit Development. |
|---|
| Legal Name of Project: |

Describe common elements and recreational facilities:

**RECONCILIATION**

Indicated Value by: Sales Comparison Approach $ 54,000      Cost Approach (if developed) $ N/A      Income Approach (if developed) $

Final Reconciliation   See attached addenda.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:   See attached addenda.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $      54,000      , as of:      04/07/2010      , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

**ATTACHMENTS**

A true and complete copy of this report contains _____ pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☐ Narrative Addendum | ☒ Photograph Addenda | ☒ Sketch Addendum |
|---|---|---|---|---|
| ☒ Map Addenda | ☐ Additional Sales | ☐ Cost Addendum | ☐ Flood Addendum | ☐ Manuf. House Addendum |
| ☐ Hypothetical Conditions | ☐ Extraordinary Assumptions | ☐ | | |

Client Contact:                                              Client Name:   YAKUBIK, JOSEPH

E-Mail:                                     Address:   4443 E. HARMON AVENUE LAS VEGAS, NV 89121

**SIGNATURES**

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *Carl Bassett* (signature) | |
| Appraiser Name:   CARL BASSETT | Supervisory or Co-Appraiser Name: |
| Company:   APEX APPRAISAL | Company: |
| Phone: (702) 228-0028      Fax: | Phone:      Fax: |
| E-Mail: EMAILAPEX@COX.NET | E-Mail: |
| Date of Report (Signature):   04/08/2010 | Date of Report (Signature): |
| License or Certification #:   A.0007151-CR      State: NV | License or Certification #:      State: |
| Designation: | Designation: |
| Expiration Date of License or Certification:   1/31/2011 | Expiration Date of License or Certification: |
| Inspection of Subject:   ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject:   ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection:   04/07/2010 | Date of Inspection: |

## Assumptions, Limiting Conditions & Scope of Work

YAKUBIK
File No.: 9627C

| Property Address: | 4443 E. HARMON AVENUE | | City: LAS VEGAS | | State: NV | Zip Code: 89121-6545 |
|---|---|---|---|---|---|---|
| Client: | YAKUBIK, JOSEPH | | Address: | | | |
| Appraiser: | CARL BASSETT | | Address: 2855 ST. ROSE PKWY #100-13, HENDERSON, NV 89052 | | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

— The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

— The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

— If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

— The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

— If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

— The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

— The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

— The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

— If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

— An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

— The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

— An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.


The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.


Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

**GP** RESIDENTIAL    Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

Main File No. 9627C Page #6

YAKUBIK
File No.: 9627C

## Certifications

| | | | | |
|---|---|---|---|---|
| Property Address: 4443 E. HARMON AVENUE | | City: LAS VEGAS | State: NV | Zip Code: 89121-6545 |
| Client: YAKUBIK, JOSEPH | | Address: | | |
| Appraiser: CARL BASSETT | | Address: 2855 ST. ROSE PKWY #100-13, HENDERSON, NV 89052 | | |

**APPRAISER'S CERTIFICATION**

I certify that, to the best of my knowledge and belief:— The statements of fact contained in this report are true and correct.— The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by
the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.— I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.— My engagement in this assignment was not contingent upon developing or reporting predetermined results.— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction
in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.— I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

THE APPRAISER HAS COMPLETED AN APPRAISAL REPORT ON THE PROPERTY WITH AN ASSIGNMENT DATED 01/13/2010. THE CLIENT IS AWARE OF THIS ASSIGNMENT AS THEY WERE THE CLIENT ON THE PRIOR REPORT. NO OTHER APPRAISALS HAVE BEEN COMPLETED ON THE PROPERTY WITHIN THE PAST 36 MONTHS.

DEFINITION OF MARKET VALUE *:Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite
to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.Additional Certifications:

| | |
|---|---|
| Client Contact: | Client Name: YAKUBIK, JOSEPH |
| E-Mail: | Address: |

| **APPRAISER** | **SUPERVISORY APPRAISER (if required)** or **CO-APPRAISER (if applicable)** |
|---|---|
| *Carl Bassett* | |
| Appraiser Name: CARL BASSETT | Supervisory or Co-Appraiser Name: |
| Company: APEX APPRAISAL | Company: |
| Phone: (702) 228-0028 Fax: | Phone: Fax: |
| E-Mail: EMAILAPEX@COX.NET | E-Mail: |
| Date Report Signed: 04/08/2010 | Date Report Signed: |
| License or Certification #: A.0007151-CR State: NV | License or Certification #: State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 1/31/2011 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 04/07/2010 | Date of Inspection: |

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                3/2007

## Supplemental Addendum

File No. 9627C

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code  89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | | |

**Highest & Best Use Explanation**
CONSIDERING THE LEGAL RESTRICTIONS, PHYSICAL CHARACTERISTICS OF THE PROPERTY, SURROUNDING DEVELOPMENT
TRENDS AND MARKET DEMAND, THE HIGHEST AND BEST USE OF THE SUBJECT IS CONSIDERED TO BE CONSISTENT WITH THE
CURRENT SINGLE FAMILY RESIDENTIAL USE.

**Definition of Inspection**
THE TERM "INSPECTION," AS USED IN THIS REPORT, IS NOT THE SAME LEVEL OF INSPECTION THAT IS REQUIRED FOR A
"PROFESSIONAL HOME INSPECTOR." THE APPRAISER DOES NOT FULLY INSPECT THE FOUNDATION, ELECTRICAL SYSTEM,
PLUMBING SYSTEMS, MECHANICAL SYSTEMS, FLOOR STRUCTURE, HVAC SYSTEMS, AND OR SUBFLOOR/ATTIC. THE APPRAISER
IS NOT AN EXPERT IN CONSTRUCTION MATERIALS AND CANNOT IDENTIFY SPECIFIC REPAIRS UNLESS THEY ARE VISIBLY
OBVIOUS. THE PURPOSE OF THE APPRAISAL IS TO MAKE AN ECONOMIC EVALUATION OF THE SUBJECT PROPERTY. IF THE
CLIENT NEEDS A MORE DETAILED INSPECTION OF THE PROPERTY, A HOME INSPECTION, BY A PROFESSIONAL HOME
INSPECTOR, IS SUGGESTED.

**Scope of Work**
THE INFORMATION IN THE REPORT WAS ANALYZED AND BELIEVED TO BE ACCURATE, APPRAISAL METHODS AND TECHNIQUES
WERE EMPLOYED, AND THE REASONING SUPPORTS THE OPTIONS AND CONCLUSIONS FOUND IN THIS REPORT.

**Client**
THE APPRAISER WAS ENGAGED BY JOSEPH YAKUBIK, WHO IS CONSIDERED THE CLIENT FOR THIS ASSIGNMENT.

**Analysis and Report Form**
THE APPRAISAL IS BASED ON THE INFORMATION GATHERED BY THE APPRAISER FROM PUBLIC RECORDS, THE GLVAR MLS
RECORDS, INSPECTION OF THE SUBJECT PROPERTY AND MARKET AREA, AS WELL AS THE SELECTION OF COMPARABLE SALES,
LISTINGS, PENDING SALES, AND/OR RENTALS WITHIN THE SUBJECT MARKET AREA. THE ORIGINAL SOURCE OF THE
COMPARABLE DATA DESCRIBED IN THE DATA SOURCE IS DISCLOSED IN THE COMPARABLE SALES GRID. THE SOURCES AND
DATA ARE CONSIDERED RELIABLE. WHEN CONFLICTING INFORMATION WAS PROVIDED THE SOURCE DEEMED MOST RELIABLE
WAS USED. OCCASIONALLY, MLS PHOTOGRAPHS WERE USED WHERE ACCESS TO THE PROPERTY WAS DENIED (MANY HOMES
IN THE LAS VEGAS AREA HAVE EITHER ELECTRONIC GATED ENTRANCES OR GUARD GATED NEIGHBORHOOD ENTERENCES
WERE SECURITY PREVENTS ACCESS). ALSO, IN SOME CASES THE MLS PHOTO IS DEEMED MORE INDICATIVE OF THE
COMPARABLE SALE FROM THE TIME OF THE SALE BECAUSE OF RECENT REMODELING OR DAMAGE TO THE HOME.

**Intended Users**
IN ADDITION TO THE CLIENT NAMED ABOVE OTHER INTENDED USERS IDENTIFIED BY THE CLIENT AT THE TIME OF ENGAGEMENT
INCLUDING THE CLIENTS EMPLOYEE'S, PERSONNEL, THE CLIENTS ASSIGNS', AND ANY APPLICABLE FEDERAL AND STATE
REGULATORY AGENCIES HAVING JURISDICTION OVER THE CLIENT. USE OF THIS APPRAISAL AND APPRAISAL REPORT BY
OTHER USERS IS NOT INTENDED BY THE APPRAISER. UNLESS OTHERWISE IDENTIFIED BY THE CLIENT AS BEING AN INTENDED
USER. UNAUTHORIZED USERS MAY INCLUDE, BUT ARE NOT LIMITED TO, THE CURRENT OWNER OF THE SUBJECT PROPERTY,
THE BORROWER IN A PENDING LOAN TRANSACTION, OTHER MORTGAGE LENDING INSTITUTIONS, ANY POTENTIAL BUYERS,
MORTGAGE INSURER, OUTSIDE LENDERS CONTEMPLATING PURCHASE OR MORTGAGE ACTIVITY ON THIS PROPERTY ARE
URGED TO SEEK A SEPARATE OPINION OF VALUE. ANY ADDITIONAL REQUESTS IN THIS ASSIGNMENT BY THIRD PARTIES MUST
BE REQUESTED IN WRITING AND MAY BE SUBJECT TO ADDITIONAL BILLING TO RECOVER COSTS ASSOCIATED WITH SUCH
REQUESTS.

**Intended Use**
THE INTENDED USE OF THE APPRAISAL REPORT IS FOR A BANKRUPTCY PROCEEDING, "FOR THE CLIENT TO EVALUATE THE
PROPERTY THAT IS THE SUBJECT PROPERTY."

**• URAR : Neighborhood - Description**
THE SUBJECT IS LOCATED IN AN AREA OF TRACT STYLED HOMES WHICH ARE SINGLE FAMILY HOMES. THE SUBJECT IS
LOCATED IN A GATED NEIGHBORHOOD WITH COMMON AMENITIES.  IT IS LOCATED WITHIN 2 MILES OF SHOPPING, SCHOOLS
AND OTHER AMENITIES. THERE ARE PARKS & PUBLIC RECREATION FACILITIES IN THE AREA. EMPLOYMENT STABILITY IS ABOVE
AVERAGE. THE NEIGHBORHOOD IS APPROXIMATELY 25-30 MINUTES FROM DOWNTOWN LAS VEGAS AND 25-30 MINUTES FROM
THE LAS VEGAS BLVD WHICH ARE BOTH  MAJOR EMPLOYMENT CENTERS. THE SUBJECT IS IN A NEIGHBORHOOD OF
PREDOMINATELY SINGLE FAMILY HOUSING.

**• URAR : Neighborhood - Market Conditions**
THE AVERAGE HOME IN SUBJECTS ZIP CODE (89121) WHICH IS IN THE SOUTH CENTRAL AREA OF LAS VEGAS, IN 2005 THE
SUBJECTS ZIP CODE INCREASED IN VALUE 31% ON THE YEAR (ACCORDING TO "STILL CLIMBING, BUT NOT QUITE AS FAST,"
REVIEW JOURNAL 2/19/2006 PAGE E1). FOR 2006 THE SAME ZIP CODE INCREASED 8% COMPARED TO 2005 (LAS VEGAS VIEW
JOURNAL 3/4/07 E-1, "SLACK OF APPRECIATION"). IN 2007 HOMES IN THE SUBJECTS ZIP CODE APPRECIATED -12% ACCORDING
TO "DOWN, DOWN, DOWN" LAS VEGAS REVIEW JOURNAL 02/24/2008. IN 2008 HOMES IN THE SUBJECTS ZIP CODE DEPRECIATED
-33% ACCORDING TO "DROP, DROP, DROP" LAS VEGAS REVIEW JOURNAL, 02/22/2008. MOST HOMES TYPICALLY SELL IN LESS
THAN 180 DAYS IF PRICED COMPETITIVELY.  THE MAJORITY OF LOANS ARE FHA WITH SOME CONVENTIONAL AND VA BACKED
LOANS. THE MAJORITY OF FINANCING FOR HOME BUYERS HAS BEEN FHA WITH SOME CONVENTIONAL AND VA AS WELL.

## Supplemental Addendum

File No. 9627C

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | |
| City | LAS VEGAS | County | CLARK | State NV | Zip Code 89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | |

## Market Area Activity

Area: 302



**Month/Year**

-o- # Active    -◆- # New    -◆- # Sold    □ Avg Sale Price (000's)

**• URAR : Improvements - Condition of the Property**
THE SUBJECT IS ASSUMED TO HAVE TYPICAL PHYSICAL DEPRECIATION FOR EFFECTIVE AGE. NO EXTERNAL, PHYSICAL OR
FUNCTIONAL OBSOLESCENCE NOTED AT INSPECTION. THE APPRAISER IS NOT TRAINED AS A HOME INSPECTOR AND DOES NOT
WARRANT CONDITION OR UTILITY.   THE PROPERTY WAS INSPECTED FROM THE EXTERIOR AND ASSUMPTIONS AS TO THE
CONDITION AND UTILITY WERE TAKEN.

**• GP Residential : Sales Comparison Analysis - Summary of Sales Comparison Approach**
THE COMPARABLES SELECTED ARE LOCATED INSIDE THE SUBJECT MARKET SEGMENT. THE SALES WERE TAKEN FROM THE
SUBJECTS  PUD NEIGHBORHOOD. THEY ARE BELIEVED TO ATTRACT THE SAME BUYERS AS THE SUBJECT PROPERTY.  ALL
COMPARABLES HAVE BEEN GIVEN WEIGHT IN DETERMINING VALUE ACCORDING TO THEIR NET AND GROSS ADJUSTMENTS.

**• URAR : Reconciliation - Reconciliation and Final Value Conclusion**
THE MOST WEIGHT IS GIVEN TO THE SALES COMPARISON APPROACH.  THE RELIANCE ON THE SALES COMPARISON APPROACH
IS DUE TO THE RECENT SIMILAR SALES AVAILABLE IN THE MARKET PLACE WHICH CAN REPRESENT THE SUBJECT IN THE
CURRENT MARKET.  THE INCOME APPROACH IS NOT DEEMED TO BE APPLICABLE TO THIS ASSIGNMENT DUE TO THE LACK OF
RENTAL INFORMATION FROM THIS LOCATION. THE COST APPROACH WAS NOT DEVELOPED FOR THIS ASSIGNMENT.

**• URAR : Conditions of Appraisal**
NO PERSONAL PROPERTY WAS INCLUDED  IN THE DETERMINATION OF VALUE. THIS APPRAISAL REPORT IS A SUMMARY
REPORT ACCORDING TO USPAP.  THE APPRAISER RESERVES THE RIGHT TO MAKE ANY NEEDED CORRECTIONS TO THE
APPRAISAL REPORT THAT MAY BE FOUND.

Main File No. 9527C| Page #9|

## Photograph Addendum

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | |
| City | LAS VEGAS | County | CLARK | State NV | Zip Code 89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | |



**FRONT OF HOME**



**STREET IN FRONT OF SUBJECT**



**DAMAGED WOOD SIDING**



**KITCHEN AND DINING AREA**



**UNFINISHED TILE, DRYWALL, AND CEILING
IN KITCHEN AREA**



**KITCHEN**

## Photograph Addendum

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | |
| City | LAS VEGAS | County  CLARK | | State  NV | Zip Code  89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | |



**BARE FLOORS TROUGHOUT**



**DAMAGED SHINGLE ROOF**



**EMPTY INGROUND POOL**



**OUTDATED POOL EQUIPMENT**



**SIDE OF HOME**



**DAMAGED WOOD SIDING**

Main File No. 9627CT Page #11

## Photograph Addendum

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code 89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | | |




**REAR OF HOME WITH DAMAGED WOOD SIDING**




**UNFINISHED DRYWALL ON CEILING**

**BEDROOM
(BARE FLOOR)**




**LIVING ROOM**

**BATHROOM
(DAMAGED TILE)**

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 4443 E. HARMON AVENUE |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code | 89121-6545 |
| Lender | YAKUBIK, JOSEPH |



### Comparable 1

4527 HARMON CIRCLE

| | |
|---|---|
| Prox. to Subject | 0.80 miles E |
| Sales Price | 42,000 |
| Gross Living Area | 1,164 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1 |
| Location | OFF BUSY ROAD |
| View | NEIGHBORHOOD |
| Site | 11,248 SQ FT |
| Quality | AVERAGE |
| Age | 49 YEARS |



### Comparable 2

4802 LANA DRIVE

| | |
|---|---|
| Prox. to Subject | 0.49 miles E |
| Sales Price | 58,000 |
| Gross Living Area | 1,240 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | SUBURBAN NGHBR |
| View | NEIGHBORHOOD |
| Site | 6,000 SQ FT |
| Quality | AVERAGE |
| Age | 38 YEARS |



### Comparable 3

4186 OXNARD CIRCLE

| | |
|---|---|
| Prox. to Subject | 0.38 miles SW |
| Sales Price | 55,000 |
| Gross Living Area | 1374 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | NEAR FREEWAY |
| View | NEIGHBORHOOD |
| Site | 8,250 SQ FT |
| Quality | AVERAGE |
| Age | 39 YEARS |

Main File No. 9627C| Page #13

## Building Sketch

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code 89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | | |



Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | |
|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | Subtotals |
| GLA1 | First Floor | 1187.00 | 1187.00 | First Floor | |
| GAR | Garage | 483.00 | 483.00 | 3.00 x 22.00 | 66.00 |
| P/P | Covered Patio | 180.00 | 180.00 | 3.00 x 21.00 | 63.00 |
| | | | | 23.00 x 46.00 | 1058.00 |
| Net LIVABLE Area | (rounded) | | 1187 | 3 Items (rounded) | 1187 |

## Location Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 4443 E. HARMON AVENUE | | | | |
| City | LAS VEGAS | County  CLARK | | State  NV | Zip Code  89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | | |



## PLAT MAP

| | | | | |
|---|---|---|---|---|
| Borrower/Client | N/A | | | |
| Property Address | 4443 E. HARMON AVENUE | | | |
| City | LAS VEGAS | County CLARK | State NV | Zip Code 89121-6545 |
| Lender | YAKUBIK, JOSEPH | | | |



## APPRAISERS LICENSE

# APPRAISER CERTIFICATE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

**NOT TRANSFERABLE**          **REAL ESTATE DIVISION**          **NOT TRANSFERABLE**

This is to Certify That : **CARL A BASSETT**          Certificate Number: **A.0007151-CR**

Is duly authorized to act as a **CERTIFIED RESIDENTIAL APPRAISER** from the issue date to the expiration date at the business address stated here in, unless the certificate is sooner revoked, cancelled, withdrawn, or invalidated.

Issue Date: **February 10, 2009**          Expire Date: **January 31, 2011**

In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in it by Chapter 645C of the Nevada Revised Statues, has caused this Certificate to be issued with its Seal printed thereon. This certificate must be conspicuously displayed in place of business.

FOR: APEX APPRAISAL
     1777 BAJA LN
     HENDERSON, NV 89012

REAL ESTATE DIVISION

ANN M McDERMOTT
*Administrator*

# EXHIBIT 3

1

2

3

4

5

6

7   STACY M. ROCHELEAU, ESQ.                              E-filed
    Nevada Bar No. 7886
8   ROCHELEAU LAW GROUP, P.C.
    375 N. Stephanie St., Bldg. #2
9   Henderson, Nevada 89014
    stacy@rocheleaulaw.com
10  Attorneys for Debtor

11              **UNITED STATES BANKRUPTCY COURT**

12                    **DISTRICT OF NEVADA**

13

14  In re:                              )    Case No.:    **BK-S-09-33061-mkn**
                                        )
15      BRAELYNN LAND, LLC,             )    **CHAPTER 11**
                                        )
16              Debtor.                 )    Date of Hearing:
    _____)    Time of Hearing:
17

18      **ORDER GRANTING MOTION TO SELL REAL PROPERTY**

19          Upon the motion to sell real property heard on October 20, 2010 praying for authority to sell the

20  Real Property at 4443 Harmon, Las Vegas, Nevada, Free and Clear of Liens, Charges, Interest and

21  Encumbrances Pursuant to 11 U.S.C. §363(b)(1):

22          It appearing that the required notice of said Application has been given to the interested parties,

23  and after a duly noticed hearing on the matter, the Court being satisfied that the sale of said property

24  would be to the best interest of the estate;

25          **IT IS HEREBY ORDERED** that the Real Estate Purchase Contract shall be approved and the

26  Real Property at 4443 Harmon, Las Vegas, Nevada, Free and Clear of Liens, Charges, Interest and

27

28

                                      1

1 | Encumbrances Pursuant to 11 U.S.C. §363(b)(1) shall be sold pursuant to the same.

2

3 | Respectfully submitted by:

ROCHELEAU LAW GROUP, P.C.

4

5

6 | Stacy M. Rocheleau, Esq.
Nevada Bar No. 7886
7 | 375 N. Stephanie St., Bldg #2
Henderson, NV 89014
8 | (702) 914-0400

9 | **ALTERNATIVE METHOD RE: RULE 9021**

10

11 | In accordance with LR 9021 ( c), counsel submitting this document certifies that the order accurately
reflects the court's ruling and that (check one):

12

13 | ___ The court has waived the requirement of approval under LR 9021(b)(1).

14 | ___ No party appeared at the hearing or filed an objection to the motion.

15

16 | ___ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and
any unrepresented parties who appeared at the hearing, and each has approved or disapproved the
order, or failed to respond, as indicated below [list each party and whether the party has approved,
17 | disapproved, or failed to respond to the document]:

18

19 | Approved/ Disapproved:

20 | _____

21

22

23 | ___ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all
counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and
24 | each has approved or disapproved the order, or failed to respond, as indicated below [list each party
and whether the party has approved, disapproved, or failed to respond to the document]:

25

26

27

28 | #   #   #

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28