TIFFANY & BOSCO, P.A.
Gregory L. Wilde, Esq.
Nevada Bar No. 4417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787
glw@tblaw.com
Attorneys for US Bank, N.A.
10-71050

Electronically Filed on March 17, 2011

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In Re:

JOSEPH WILLIAM YAKUBIK and DARCIE
ANN YAKUBIK,

                    Debtors.

Case No.: 09-24688-LBR
Chapter 11

Date: March 30, 2011
Time: 2:00 p.m.

## OPPOSITION TO MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF CREDITORS PURSUANT TO 11 U.S.C. § 506(a)

COMES NOW U.S. BANK, N.A. (hereinafter "Secured Creditor") and files this Opposition to Motion to Value Collateral, "Strip Off" and Modify Rights of Creditors Pursuant to 11 U.S.C. § 506(a) and states as follows:

### I. Statement of Facts

On or about January 13, 2004, the Debtors purchased the property commonly known as 1448 MacDonald Ranch Drive, Henderson, Nevada, APN 178-28-613-003 (hereinafter the "Subject Property"). In connection with the purchase of the Subject Property, the Debtors executed a note secured by a deed of trust. On April 22, 2009, a Notice of Default and Election to Sell was recorded with the Clark County Clerk due to the Debtors' non-payment of the note secured by the deed of trust in favor of Secured Creditor.

On August 12, 2009, the Debtors filed a Petition under Chapter 11 of the Bankruptcy Code.

On September 29, 2010, the Debtors and the Secured Creditor entered into a six month Interim

Stipulation for Adequate Protection in relation to the Subject Property. Attached hereto as Exhibit "A"

is a true and correct copy of the Order Re: Interim Stipulation for Adequate Protection. The Debtors did

not make any of the required payments under the Interim Stipulation. On February 27, 2011, Debtors

filed the instant Motion.

## II. Legal Analysis and Discussion

Here, Secured Creditor holds a secured interest in first position. Debtors, in their Motion, claim

that Secured Creditor's claim may be bifurcated under Section 506(a)(1) of the Bankruptcy Code.

Debtors' Motion, 6:12-14. Therein, Debtors state, "Section 506(a)(1) of the Bankruptcy Code provides

that a Chapter 11 debtor may bifurcate a secured lender's claim into an allowed secured claim and an

allowed unsecured claim based upon the actual value of the property securing such lender's lien."

However, there are numerous problems with the Debtors' Motion.

### 1. According to the Debtors' Schedules, the Subject Property is the Debtors' Primary Residence and, Therefore, Bifurcation is Prohibited By 11 U.S.C. § 1123(b)(5)

On August 27, 2009, the Debtors filed their Schedules A through J. On their Schedule C, the

Debtors claimed an exemption for the Subject Property under NRS 115.010, which is Nevada's

homestead statute, thereby indicating that the Subject Property is the Debtors' primary residence.

Attached hereto as Exhibit "B" is a true and correct copy of the Debtors' Schedule C. The Debtors also

failed to list any executory contracts or unexpired leases whatsoever in their Schedule G. Attached

hereto as Exhibit "C" is a true and correct copy of the Debtors' Schedule G. The Debtors have never

amended any of their schedules.

Therefore, according to the Debtors' owns Schedules, the Subject Property is not a rental but

rather the Debtors' principal residence, and the Debtors are making a claim to obtain relief which is not

permitted under the Bankruptcy Code. 11 U.S.C. § 1123(b) states, in relevant part:

1

2      **(b)** Subject to subsection (a) of this section, a plan may—

3      ...

       **(5)** modify the rights of holders of secured claims, **other than a claim secured**
4      **only by a security interest in real property that is the debtor's principal**
       **residence,** or of holders of unsecured claims, or leave unaffected the rights of
5      holders of any class of claims;

6      (Emphasis added.)

7              In the instant Motion, the Debtors have bundled the Subject Property with other real property for

8      which the provided law and references may be applicable. Yet, the proposed law is not applicable to the

9      Secured Creditor's claim on the Subject Property. Because the Subject Property is the Debtors' primary

10     residence, the Debtors are prohibited under 11 U.S.C. § 1123(b)(5) from modifying the rights of the

11     Secured Creditor.

12             Presuming that the Debtors moved out of the Subject Property after filing bankruptcy, the

13     Secured Creditor asserts that it was not the intent of Congress to allow a debtor to move out of its

14     residence during the life of a plan to circumvent the prohibitions of modifying a debt secured by a

15     residence. 11 U.S.C. § 1123(b)(5).

16             There are too many unanswered questions in the Debtors' attempt to treat the Subject Property

17     as a rental and strip a large portion of the Secured Creditor's interest in the same. The Debtors must

18     disclose the information necessary to answer these questions.

19             **2.      The Debtors' Valuation Figures are Inconsistent and Unsupported**

20             Assuming that the Debtors could overcome the anti-modification provision found in 11 U.S.C. §

21     1123(b)(5), the Debtors would still face additional problems. In their Motion, the Debtors state that

22     "[a]s of the date of this Motion, the estimated **value** of Property 1 [the Subject Property] was

23     $920,000.00, as set forth in *Exhibit A*, attached herein and incorporated for reference." (Emphasis in

24     original.) Debtors' Motion, 2:10-11. Exhibit A to the Debtors' Motion is the Declaration of Joseph

25     William Yakubik in Support of Motion to Value (Property 1). In his Declaration, Debtor Joseph

26

1    Yakubik states, "My opinion and belief is that the real estate market has declined and the values of my

2    rental properties are worth substantially less than I paid for them." Attachment #1 to Doc. #296.

3    Debtor Joseph Yakubik then goes on to state that it is his opinion that the Subject Property has a current

4    market value of $831,773.00. Attachment #1 to Doc. #296. The Debtor's own opinion of the value of

5    the Subject Property (i.e. $831,773.00), as set forth in Exhibit A attached to the Debtors' Motion,

6    differs from the figure set forth in the Debtors' Motion (i.e. $920,000.00) by $88,227.00.

7
8            The Debtors' own opinion as to the value of the Subject Property is also not a sufficient basis on

9    which to bifurcate the claim of the Secured Creditor. In contrast, the Secured Creditor has obtained an

10   appraisal from Glenn J. Howard of Howard Appraisal Group valuing the Subject Property at

11   $950,000.00, which exceeds both of the values set forth in the Debtors' Motion and the Declaration of

12   Debtor Joseph Yakubik. Attached hereto as Exhibit "D" is a true and correct copy of the Secured

13   Creditor's appraisal. Secured Creditor will obtain a second appraisal if requested to do so by the Court.

14           **3.    The Debtors Have Breached the Terms of the Interim Stipulated Order Regarding
                     the Subject Property**
15
16           Pursuant to the Interim Stipulation, the Debtors were to make monthly payments to the Secured

17   Creditor in the amount of $6,865.00 for a period of six months. Exhibit "A" attached hereto, 1:25

18   through 2:7. The Interim Stipulation also states that "[t]he acceptance of these funds will not prejudice

19   any of the rights of US BANK NATIONAL ASSOCIATION, including the right to object to

20   confirmation and/or oppose any valuation of the Property." Exhibit "A" attached hereto, 2:8-10.

21   The Interim Stipulation further states that "Debtors shall promptly confirm their Chapter 11 plan."

22   Exhibit "A" attached hereto, 2:11.

23           The Debtors have breached the terms of their Interim Stipulation, as they failed to make a single

24   payment under the Interim Stipulation. The Secured Creditor is currently taking steps to obtain relief

25   from stay in accordance with the terms of the Interim Stipulation pertaining to default by the Debtors.

26

1   The Debtors have also breached the Interim Stipulation by failing to promptly confirm a Chapter 11

2   plan.

3   ### III. Conclusion

4       The Secured Creditor requests that the Debtors' Motion be denied in its entirety.  In the

5   alternative, the Secured Creditor requests additional time to investigate the facts and circumstances

6   surrounding the Debtors' claim that the Subject Property is a rental property as well as any other issues

7   which may require further investigation.

8       WHEREFORE, this Secured Creditor asks that this Court to:

9   1.  Deny Debtor's Motion to Value Collateral; or

10  2.  In the alternative, continue the hearing to provide Secured Creditor time to investigate the
11      facts and circumstances surrounding the Debtors' claim that the Subject Property is a rental
12      property as well as any other issues which may require further investigation.

    DATED this 17th day of March, 2011.

13

14                                          TIFFANY & BOSCO, P.A.

15

16                                          /s/ Gregory L. Wilde
                                            By_____
17
                                            **GREGORY L. WILDE, ESQ.**
18                                          Attorneys for Secured Creditor

19

20

21

22

23

24

25

26

**Entered on Docket**
**October 04, 2010**

Hon. Linda B. Riegle
United States Bankruptcy Judge

STACY M. ROCHELEAU, ESQ.
Nevada Bar No. 7886
ROCHELEAU LAW GROUP, P.C.
375 N. Stephanie St., Bldg. #2
Henderson, Nevada 89014
(702) 914-0400
Fax: (702) 914-0256
stacy@rocheleaulaw.com
Attorney for Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | Case No.     BK-S-09-24688-lbr |
| | Chapter 11 |
| YAKUBIK, JOSEPH WILLIAM, and YAKUBIK, DARCIE ANN | Date:        September 29, 2010 |
| | Time:        1:30 p.m. |

### ORDER RE: INTERIM STIPULATION FOR ADEQUATE PROTECTION

Pursuant to the Interim Stipulation for Adequate Protection by and between the Movants US

BANK NATIONAL ASSOCIATION ("Creditor") and the Debtors Joseph William Yakubik and

Darcie Ann Yakubik ("Debtors"), by and through their respective counsel of record, to provide

adequate protection to the Creditor, on the following terms and conditions with regard to the real

property located at 1448 MacDonald Ranch Drive, Henderson, NV 89012 (the "Property").

**IT IS HEREBY ORDERED ADJUDGED AND DECREED,** that the automatic stay shall

remain in full force and effect on the Property for a period of six (6) months, conditioned upon the

Debtor's performing the terms of the stipulation, as follows:

## Exhibit A

1.   The Motion is vacated conditioned up the Debtor's compliance with the terms of this Order.

2.   Debtors shall make monthly adequate protection payments to Creditor commencing October 1, 2010 estimated in the amount of $6,865.00 consisting of net rental proceeds as follows:

| | |
|---|---|
| Monthly Rent: | $7,500.00 |
| Management Fee: | ($250.00) |
| HOA Dues: | ($275.00) |
| Pool Service: | ($110.00) |
| Net Proceeds: | $6,865.00 |

3.   The acceptance of these funds will not prejudice any of the rights of US BANK NATIONAL ASSOCIATION, including the right to object to confirmation and/or oppose any valuation of the Property.

4.   Debtors shall promptly confirm their Chapter 11 Plan.

5.   For so long as the automatic stay applies to the subject property, if Debtors default on any provision contained in paragraphs 1, 2, and/or 3, inclusive of this Order, Creditor shall provide written notice to Debtors at PO Box 530778, Henderson, NV 89053 and to Stacy Rocheleau, Esq., at 375 N. Stephanie Street, Building 2, Henderson, Nevada 89074, Debtors' attorneys of record, indicating the nature of the default. If Debtors fail to cure the default after the passage of thirty (30) calendar days from the date written notice is placed in the mail, then Creditor may file an ex parte Declaration of Non-Cure and an Order terminating automatic stay, the automatic stay shall be immediately terminated as to Creditor and Creditor may proceed to foreclose its security interest in the Property under the terms of the Note and Mortgage and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Property without further order or proceeding of this Court.

5. In the event that Creditor is granted Relief from the Automatic Stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

///

///

///

///

2

6. In the event that the Debtors default under this Stipulation and Creditor forwards a 30-day letter to Debtors, they shall be required to tender $75.00 for each default letter submitted in order to cure the default.

Dated this ___ day of September, 2010.

Dated this ___ day of September, 2010.

WILDE & ASSOCIATES

ROCHELEAU LAW GROUP

_____
Gregory L. Wilde, Esq.
Nevada Bar No. 4417
212 South Jones Boulevard
Las Vegas, Nevada 89107
bk@wildelaw.com
Attorneys for US BANK
NATIONAL ASSOCIATION

_____
Stacy M. Rocheleau, Esq.
Nevada Bar No. 7886
375 N. Stephanie, Building 2
Henderson, Nevada 89014
stacy@rocheleaulaw.com
Attorney for Debtors

# # #

3

B6C (Official Form 6C) (12/07)

In re   **Joseph William Yakubik,**
        **Darcie Ann Yakubik**

Case No.   **09-24688**

_____
Debtors

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
☑ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds
$136,875.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| **1448 Mac Donald Ranch** | Nev. Rev. Stat. §§ 115.010, 21.090(1)(l) | 0.00 | 1,600,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **Silver State Credit Union** | Nev. Rev. Stat. § 21.090(1)(g) | 3,313.68 | 3,313.68 |
| **Clark County Credit Union** | Nev. Rev. Stat. § 21.090(1)(g) | 25.15 | 25.15 |
| **Household Goods and Furnishings** | | | |
| **Household furnishings** | Nev. Rev. Stat. § 21.090(1)(b) | 5,500.00 | 5,500.00 |
| **Wearing Apparel** | | | |
| **clothing** | Nev. Rev. Stat. § 21.090(1)(b) | 10,000.00 | 10,000.00 |
| **Firearms and Sports, Photographic and Other Hobby Equipment** | | | |
| **Glock 27 - 40 cal** | Nev. Rev. Stat. § 21.090(1)(b) | 1,000.00 | 1,000.00 |
| **Glock 19 - 9mm** | | | |
| **Interests in Insurance Policies** | | | |
| **Life insurance policy** | Nev. Rev. Stat. § 21.090(1)(k) | 3,000.00 | 3,000.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2007 GMC Yukon Denali** | Nev. Rev. Stat. § 21.090(1)(f) | 0.00 | 32,000.00 |
| **2006 Cadillac STS** | Nev. Rev. Stat. § 21.090(1)(f) | 15,451.56 | 40,000.00 |
| **Office Equipment, Furnishings and Supplies** | | | |
| **desk, couch, computer, file cabinets** | Nev. Rev. Stat. § 21.090(1)(d) | 3,450.00 | 3,450.00 |

| | Total: | 41,740.39 | 1,698,288.83 |
|---|---|---|---|

**0**   continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Exhibit B

Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

In re   **Joseph William Yakubik,**                                   Case No. _____**09-24688**_____
        **Darcie Ann Yakubik**
        _____,
                                    Debtors

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

**0**
_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                Best Case Bankruptcy





## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1448 MACDONALD RANCH DRIVE
MCDONALD RANCH LOT 3 PLANNING AREA 8A PLAT BOOK 89 PAGE 47 l
HENDERSON, NV  89012-7247

### FOR:
SAXON MORTGAGE SERVICES, INC.
4708 MERCANTILE DRIVE NORTH
FORT WORTH, TX  76137

### AS OF:
06/25/2010

### BY:
GLENN J. HOWARD

Exhibit _D_

| Borrower/Client | JOSEPH YAKUBIK | | | File No. | 10019GJH |
|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code | 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | |

## TABLE OF CONTENTS



Cover Page .................................................................................................................................. 1
Summary of Salient Features ......................................................................................................... 2
URAR ............................................................................................................................................ 3
Additional Listings 1-3 .................................................................................................................. 9
Photograph Addendum ................................................................................................................. 10
Photograph Addendum ................................................................................................................. 11
Photograph Addendum ................................................................................................................. 12
Photograph Addendum ................................................................................................................. 13
Photograph Addendum ................................................................................................................. 14
Photograph Addendum ................................................................................................................. 15
Photograph Addendum ................................................................................................................. 16
Comparable Photos 1-3 ............................................................................................................... 17
Listings Photos 1-3 ...................................................................................................................... 18
Text Addendum ............................................................................................................................ 19
Property History of Subject Property ............................................................................................. 20
Addendum .................................................................................................................................... 21
Location Map ................................................................................................................................ 22
Supplemental Addendum w/sig block ............................................................................................ 23

# SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 1448 MACDONALD RANCH DRIVE |
| | Legal Description | FOOTHILLS MACDONALD RANCH LOT 3 PLANNING AREA 8A PLAT BOOK 89 PAG |
| | City | HENDERSON |
| | County | CLARK |
| | State | NV |
| | Zip Code | 89012-7247 |
| | Census Tract | 0053 39 |
| | Map Reference | 86-F3 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ OTHER |
| | Date of Sale | N/A |

| CLIENT | | |
|---|---|---|
| | Borrower / Client | JOSEPH YAKUBIK |
| | Lender | SAXON MORTGAGE SERVICES, INC. |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 5,837 |
| | Price per Square Foot | $ |
| | Location | HENDERSON |
| | Age | 3 |
| | Condition | AVERAGE |
| | Total Rooms | 15 |
| | Bedrooms | 5 |
| | Baths | 6.5 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | GLENN J. HOWARD |
| | Date of Appraised Value | 06/25/2010 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 950,000 |

HOWARD GROUP APPRAISALS (260)492-2191

5103030
File # 10019GJH

## Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 1448 MACDONALD RANCH DRIVE | City HENDERSON State NV Zip Code 89012-7247 |
| Borrower JOSEPH YAKUBIK | Owner of Public Record SAME AS BORROWER County CLARK |

Legal Description FOOTHILLS MACDONALD RANCH LOT 3 PLANNING AREA 8A PLAT BOOK 89 PAGE 47 LOT 3 BLOCK 1

Assessor's Parcel # 178-28-613-003    Tax Year 2010    R.E. Taxes $ 19,985.32

Neighborhood Name MACDONALD HIGHLANDS    Map Reference 86-F3    Census Tract 0053.39

Occupant ☐ Owner ☐ Tenant ☒ Vacant    Special Assessments $ SID/LID    ☒ PUD    HOA $ 340    ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) MARKET VALUE

Lender/Client SAXON MORTGAGE SERVICES, INC.    Address 4708 MERCANTILE DRIVE NORTH, FORT WORTH, TX 76137

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). PER MLS SEARCH, MLS#1023751 THE SUBJECT IS LISTED AS A RENTAL. RENTAL

TERMS ARE ANNUAL@ $7,950.00 PER MONTH.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

Contract Price $ OTHER    Date of Contract N/A    Is the property seller the owner of public record? ☒ Yes ☐ No Data Source(s) ASSESSOR

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No

If Yes, report the total dollar amount and describe the items to be paid. NONE

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | | PRICE $(000) | AGE (yrs) | One-Unit | 90 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | | Low | NEW | 2-4 Unit | 3 % |
| Growth ☐ Rapid ☐ Stable ☒ Slow | | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | | | | 550 Low NEW | | Multi-Family | 2 % |
| Neighborhood Boundaries See attached addenda | | | | | | 2,500 High | 5 | Commercial | 5 % |
| | | | | | | 800 Pred. | 3 | Other | % |

Neighborhood Description SUBJECT'S NEIGHBORHOOD HAS ALL CUSTOM HOMES, LOCATED ON AND AROUND DRAGON RIDGE GOLF COURSE. THE SUBJECT IS LOCATED ON A PRIVATE GOLF COURSE THAT HAS 24 HOUR ARMED SECURITY GUARDS.

Market Conditions (including support for the above conclusions) THERE IS AN OVERSUPPLY OF LARGE CUSTOM HOMES IN THE LAS VEGAS VALLEY. FINANCING FOR THIS TYPE OF PROPERTY IS OFTEN DIFFICULT. MOST HOMES ARE PURCHASED WITH CASH AND ARE SOLD FOR 1/3 OF THE LIST PRICE.

Dimensions PER SURVEY    Area 19,166 Sq.Ft.    Shape RECTANGULAR    View GOLF COURSE

Specific Zoning Classification R-1    Zoning Description SINGLE FAMILY RESIDENTIAL

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street PAVED | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 32003C2595E    FEMA Map Date 9/27/2002

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

LEGAL DESCRIPTION, LOT DIMENSIONS AND AGE ARE FURNISHED BY THE ASSESSOR'S OFFICE. SEE ADDM. NO APPARENT ADVERSE EASEMENTS OR ENCROACHMENTS NOTED. SUBJECTS SITE IS TYPICAL OF MANY OTHER SITES IN THIS AREA.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | Concrete Slab ☐ Crawl Space | | Foundation Walls | CONCRETE | Floors | CPT/WD/VINYL/AVG |
| # of Stories TWO | | Full Basement ☒ Partial Basement | | Exterior Walls | STONE/STUCCO | Walls | DRYWALL/AVG |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 1,831 sq.ft. | | Roof Surface | ASP/SHIGLE | Trim/Finish | WOOD/AVG |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 100 % | | Gutters & Downspouts NONE | | Bath Floor | VINYL/AVG |
| Design (Style) 2 STORY | ☒ Outside Entry/Exit ☐ Sump Pump | | Window Type | DBL/HUNG | Bath Wainscot | FIBERGLASS/AVG |
| Year Built 2007 | Evidence of ☐ Infestation | | Storm Sash/Insulated | AVERAGE | Car Storage | ☐ None |
| Effective Age (Yrs) 3 | ☐ Dampness ☐ Settlement | | Screens | YES | ☒ Driveway # of Cars 8 |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | Woodstove(s) # | Driveway Surface CONCRETE |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel GAS | | ☒ Fireplace(s) # 2 ☒ Fence | | ☐ Garage # of Cars 4 CAR |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck ☐ Porch | | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | | ☒ Pool INGROUN ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☐ Refrigerator ☐ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 15 Rooms 5 Bedrooms 6.5 Bath(s) 5,837 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THE SUBJECT IS VACANT. THE INTERIOR NEEDS TO BE PAINTED AND CLEANED. THE EXTERIOR NEEDS TO HAVE THE LANDSCAPING GROOMED.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Freddie Mac Form 70 March 2005    Page 1 of 6    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

5103030
File # 10019GJH

There are  26  comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 800,000  to $ 2,500,000  .

There are  5  comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 500,000  to $ 850,000  .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1448 MACDONALD RANCH DRIV | 426 STONE LAIR CT. | | 1327 QUIET RIVER AVE. | | 1359 QUIET RIVER AVE. | |
| | HENDERSON, NV 89012-7247 | HENDERSON, NV | | HENDERSON, NV | | HENDERSON, NV | |
| Proximity to Subject | | 0.61 miles | | 0.49 miles | | 0.40 miles | |
| Sale Price | $ OTHER | | $ 800,000 | | $ 830,000 | | $ 878,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 143.50 sq.ft. | | $ 164.78 sq.ft. | | $ 174.31 sq.ft. | |
| Data Source(s) | | MLS #919437 DOM=431 | | MLS #961578 DOM 362 | | MLS #934589 DOM =375 | |
| Verification Source(s) | | EXT INSPECTION | | EXT INSPECTION | | EXT INSPECTION | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CASH | | CONV | | CASH | |
| Concessions | | NONE | | NONE | | NONE | |
| Date of Sale/Time | | 05/10/2010 | | 11/20/2009 | | 05/17/2010 | |
| Location | HENDERSON | SIMILAR | | SIMILAR | | SIMILAR | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 19,166 Sq.Ft. | 15,246 SQ.FT | +19,600 | 11,761 SQ.FT | +37,025 | 10,890 SQ.FT | +41,330 |
| View | GOLF COURSE | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | 2 STORY | 2-STORY | | 2-STORY | | 2-STORY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 3 | 4 | | 4 | | 4 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 15   5   6.5 | 12   4   4.5 | | 13   5   5.5 | | 15   5   5.5 | |
| Gross Living Area | 5,837 sq.ft. | 5,575 sq.ft. | +7,860 | 5,037 sq.ft. | +24,000 | 5,037 sq.ft. | +24,000 |
| Basement & Finished | 1,831 Sq.Ft. | NONE | +25,000 | NONE | +25,000 | NONE | +25,000 |
| Rooms Below Grade | 100% | NONE | | NONE | | NONE | |
| Functional Utility | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Heating/Cooling | GFA/CA | GFA/CA | | GFA/CA | | GFA/CA | |
| Energy Efficient Items | STANDARD | SIMILAR | | SIMILAR | | SIMILAR | |
| Garage/Carport | 4CAR | 4CAR | | 3CAR | +5,000 | 3CAR | +5,000 |
| Porch/Patio/Deck | COVRD PATIO | COVRD PATIO | | COVRD PATIO | | COVRD PATIO | |
| FIREPLACE | TWO | ONE | +1,500 | THREE | -1,500 | FOUR | -3,000 |
| POOL | POOL | POOL | | POOL | | POOL | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 53,960 | ☒ + ☐ - | $ 89,525 | ☒ + ☐ - | $ 92,330 |
| Adjusted Sale Price | | Net Adj.  6.7 % | | Net Adj.  10.8 % | | Net Adj.  10.5 % | |
| of Comparables | | Gross Adj.  6.7 % | $ 853,960 | Gross Adj.  11.1 % | $ 919,525 | Gross Adj.  11.2 % | $ 970,330 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)  THE SUBJECT WAS BUILT NEW IN 2007.

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)  ASSESSOR DATA

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | SEE | NONE | NONE | NONE |
| Price of Prior Sale/Transfer | HISTORY | N/A | N/A | N/A |
| Data Source(s) | PAGE | ASSESSOR | ASSESSOR | ASSESSOR |
| Effective Date of Data Source(s) | 06/2010 | 06/2010 | 06/2010 | 06/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales    SEE SALES HISTORY PAGE

THE SUBJECT HAS NOT BEEN LISTED OR SOLD WITHIN THE LAST 36 MONTHS.  ASSESSOR'S RECORDS INDICATE THAT THE

PROPERTY IS OWNED BY JOSEPH YAKUBIK.

Summary of Sales Comparison Approach    A THOROUGH SEARCH WAS MADE OF MLS RECORDS AND THE COMPARABLES USED WERE

DEEMED THE MOST SIMILAR AVAILABLE AND CLOSEST IN PROXIMITY TO THE SUBJECT THAT HAVE CLOSED IN THE LAST 8 MONTHS.

Indicated Value by Sales Comparison Approach $  950,000

Indicated Value by: Sales Comparison Approach $  950,000    Cost Approach (if developed) $  1,167,255    Income Approach (if developed) $  N/A

MOST WEIGHT IS GIVEN TO THE MARKET APPROACH DUE TO THE AGE OF THE HOME WHICH MAKES THE COST APPROACH LESS

RELIABLE. DUE TO A LACK OF RENTAL DATA, THE INCOME APPROACH IS NOT APPROPRIATE.  THE MARKET APPROACH IS

GENERALLY CONSIDERED THE MOST APPROPRIATE INDICATOR OF RESIDENTIAL VALUE.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  NO LIABILITY IS ASSUMED FOR

ANY STRUCTURAL OR MECHANICAL DEFICIENCIES, IF ANY.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is

$  950,000  , as of  06/25/2010  , which is the date of inspection and the effective date of this appraisal.

Form 1004 — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

5103030
File # 10019GJH

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    DUE TO A LIMITED TO NO SUPPLY OF

VACANT LAND AND CORRESPONDING VACANT LAND SALES DATA, OPINION OF SITE VALUE IS DERIVED THROUGH ABSTRACTION

**COST APPROACH**

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 410,000 |
| Source of cost data  MARSHALL & SWIFT | DWELLING | 5,837 Sq.Ft. @ $ | 95.12 | =$ | 555,215 |
| Quality rating from cost service  5          Effective date of cost data  2009 | | 1,831 Sq.Ft. @ $ | 54.56 | =$ | 99,899 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | POOL, LANDSCAPING | | | =$ | 100,000 |
| SEE ADDM FOR SQUARE FOOTAGE CALCULATIONS | Garage/Carport | 1,448 Sq.Ft. @ $ | 25.00 | =$ | 36,200 |
| | Total Estimate of Cost-New | | | =$ | 791,314 |
| ESTIMATE IS BASED ON MY KNOWLEDGE OF THE MARKET AND | Less    Physical    Functional | | External | | |
| TYPICAL SITE/TOTAL VALUE RATIOS. | Depreciation    36,559 | | | =$( | 36,559) |
| MARSHALL AND SWIFT COST HANDBOOK WAS USED TO ASSIST | Depreciated Cost of Improvements | | | =$ | 754,755 |
| IN ESTIMATING REPRODUCTION COSTS  THE ESTIMATED | "As-is" Value of Site Improvements | | | =$ | 2,500 |
| ECONOMIC  LIFE OF THE SUBJECT PROPERTY IS 62 YEARS. | | | | | |
| Estimated Remaining Economic Life (HUD and VA only) | 62 Years INDICATED VALUE BY COST APPROACH | | | =$ | 1,167,255 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

| | | | | |
|---|---|---|---|---|
| Estimated Monthly Market Rent $    N/A    X Gross Rent Multiplier | N/A    = $ | | Indicated Value by Income Approach | |
| Summary of Income Approach (including support for market rent and GRM) | | | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No    Unit type(s) ☒ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project    HIGHLANDS AT MACDONALD RANCH

| | | | |
|---|---|---|---|
| Total number of phases    N/A | Total number of units    N/A | Total number of units sold | |
| Total number of units rented    N/A | Total number of units for sale    N/A | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes | ☒ No  If Yes, date of conversion. | | |

Does the project contain any multi-dwelling units?    ☐ Yes ☒ No  Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.    N/A

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

5103030
File # 10019GJH

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

5103030
File # 10019GJH

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

5103030
File # 10019GJH

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name  GLENN J. HOWARD
Company Name  HOWARD GROUP APPRAISALS.
Company Address  1429 MINUET STREET
HENDERSON, NV 89052
Telephone Number  (702)354-8477
Email Address  hgappraisals@cox.net
Date of Signature and Report  June 25, 2010
Effective Date of Appraisal  06/25/2010
State Certification #
or State License #  A 0007090-RES
or Other (describe) _____ State # _____
State  NV
Expiration Date of Certification or License  12/31/2010

ADDRESS OF PROPERTY APPRAISED
1448 MACDONALD RANCH DRIVE
HENDERSON, NV 89012-7247
APPRAISED VALUE OF SUBJECT PROPERTY $  950,000
LENDER/CLIENT
Name
Company Name  SAXON MORTGAGE SERVICES, INC.
Company Address  4708 MERCANTILE DRIVE NORTH, FORT WORTH, TX 76137
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Additional Listings

5103030
File # 10019GJH

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1448 MACDONALD RANCH DRIv | 1377 ENCHANTED RIVER DR. | | 1373 RIVER SPEY AVE. | | 1385 ENCHANTED RIVER DR. | |
| | HENDERSON, NV 89012-7247 | HENDERSON, NV | | HENDERSON, NV | | HENDERSON, NV | |
| Proximity to Subject | | 0.31 miles | | 0.30 miles | | 0.29 miles | |
| List Price | $ | | $ 1,085,000 | | $ 899,900 | | $ 784,900 |
| List Price/Gross Liv. Area | $          sq.ft. $ | 195.32 sq.ft. | | $ 162.00 sq.ft. | | $ 150.25 sq.ft. | |
| Last Price Revision Date | | | | | | | |
| Data Source(s) | | MLS#1011319 | | MLS#991668 | | MLS# 1012843 | |
| Verification Source(s) | | EXT INSPECTION | | EXT INSPECTION | | EXT INSPECTION | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjust. | DESCRIPTION | + (-) $ Adjust. | DESCRIPTION | + (-) $ Adjust. |
| Sales or Financing | | ANY/ALL | | ANY/ALL | | PENDING SALE | |
| Concessions | | AVAILABLE | | AVAILABLE | | AVAILABLE | |
| Days on Market | | 148 | | 225 | | 291 | |
| Location | HENDERSON | SIMILAR | | SIMILAR | | SIMILAR | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 19,166 Sq.Ft. | 13,068 SQ.FT | | 11,326 SQ.FT | | 15,246 SQ.FT | |
| View | GOLF COURSE | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | 2 STORY | 2 STORY | | 2 STORY | | 2 STORY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 3 | 3 | | 3 | | 3 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | + (-) | Total | Bdrms | Baths | + (-) | Total | Bdrms | Baths | + (-) |
| Room Count | 15 | 5 | 6.5 | 14 | 5 | 4.5 | | 14 | 5 | 4.5 | | 13 | 4 | 5.5 | |
| Gross Living Area | 5,837 sq.ft. | 5,555 sq.ft. | | 5,555 sq.ft. | | 5,224 sq.ft. | |
| Basement & Finished | 1,831 Sq.Ft. | NONE | | NONE | | NONE | |
| Rooms Below Grade | 100% | NONE | | NONE | | NONE | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFA/CA | GFA/CA | | GFA/CA | | GFA/CA | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 4CAR | 4 CAR | | 4 CAR | | 4 CAR | |
| Porch/Patio/Deck | COVRD PATIO | COVRD PATIO | | COVRD PATIO | | COVRD PATIO | |
| FIREPLACE | TWO | ONE | | THREE | | TWO | |
| POOL | POOL | POOL | | POOL | | POOL | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted List Price | | Net          % | | Net          % | | Net          % | |
| of Comparables | | Gross          % | $ 1,085,000 | Gross          % | $ 899,900 | Gross          % | $ 784,900 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | SEE | NA | N/A | N/A |
| Price of Prior Sale/Transfer | HISTORY | NA | N/A | N/A |
| Data Source(s) | PAGE | ASSESSOR | ASSESSOR | ASSESSOR |
| Effective Date of Data Source(s) | 06/2010 | 06/2010 | 06/2010 | 60/2010 |

Comments:   LISTINGS #1& #2 ARE ACTIVE LISTINGS. LISTING #3 IS PENDING.  NO ADJUSTMENTS ARE MADE TO LISTINGS BECAUSE OF
UNKNOWN FINAL SALES PRICE. LISTINGS ARE PROVIDED TO SHOW TIME ON THE MARKET AT THEIR CURRENT LIST PRICE. ALL
LISTINGS ARE LOCATED IN THE SUBJECT'S NEIGHBORHOOD. ALL HAVE SIMILAR FEATURES AND ALL WOULD BE CONSIDERED A
"CUSTOM" HOME.

March 2005

Form 1004 (AL) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

HOWARD GROUP APPRAISALS (260)492-2191                          File No. 100196JHT Page #10)

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | | |



SUBJECT'S FRONT



SUBJECT'S FRONT(NORTHSIDE)



SUBJECT'S FRONT(SOUTHSIDE)



STREET VIEW(NORTH)



STREET VIEW(SOUTH)



VIEW FROM THE FRONT

Form PICSIX — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

HOWARD GROUP APPRAISALS 1(260)492-2191

File No. 10019GUHH Page # 11)

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code  89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | | |



REARVIEW(NORTH)



REAR



REARVIEW(SOUTH)



VIEW FROM PATIO



POOL



INCOMPLETE BBQ

HOWARD GROUP APPRAISALS (260)492-2191   File No. 1001SCJHI Page #12)

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code | 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | | | |



WALKWAY ENTRANCE



WALKWAY ENTRANCE



WALKWAY TO FRONT



SIDELOAD GARAGE

HOWARD GROUP APPRAISALS (260)492-2191

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | | |



MASTER BATHROOM



MASTER BATHROOM



MASTER BATHROOM



MASTER SUITE



VIEW FROM INSIDE UPPER LEVEL



MASTER SUITE

HOWARD GROUP APPRAISALS (260)492-2191

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | |
| City | HENDERSON | County | CLARK | State | NV | |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | Zip Code | 89012-7247 | |



LOWER LEVEL THEATRE ROOM



THEATRE ROOM



LOWER LEVEL



UTILITY ROOM



BEDROOM



BATHROOM

HOWARD GROUP APPRAISAL (800) 432-2191

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | | | |
| City | HENDERSON | County | CLARK | State | NV | Zip Code | 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | | | |



2ND UTILITY ROOM



BEDROOM



OFFICE



BATHROOM





HOWARD GROUP APPRAISALS (260)492-2191

File No. 1001SGJHI Page #16

## Photograph Addendum

| Borrower/Client | JOSEPH YAKUBIK | | | | |
|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | |
| City | HENDERSON | County CLARK | State NV | Zip Code | 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | |



GREAT ROOM



GREAT ROOM



FOYER



GREAT ROOM



KITCHEN



DINING AREA

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client   JOSEPH YAKUBIK | | | |
| Property Address  1448 MACDONALD RANCH DRIVE | | | |
| City  HENDERSON | County  CLARK | State  NV | Zip Code  89012-7247 |
| Lender  SAXON MORTGAGE SERVICES, INC. | | | |



### Comparable 1
426 STONE LAIR CT.

| | |
|---|---|
| Prox. to Subject | 0.61 miles |
| Sale Price | 800,000 |
| Gross Living Area | 5,575 |
| Total Rooms | 12 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.5 |
| Location | SIMILAR |
| View | RESIDENTIAL |
| Site | 15,246 SQ.FT |
| Quality | AVERAGE |
| Age | 4 |



### Comparable 2
1327 QUIET RIVER AVE.

| | |
|---|---|
| Prox. to Subject | 0.49 miles |
| Sale Price | 830,000 |
| Gross Living Area | 5,037 |
| Total Rooms | 13 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.5 |
| Location | SIMILAR |
| View | RESIDENTIAL |
| Site | 11,761 SQ.FT |
| Quality | AVERAGE |
| Age | 4 |



### Comparable 3
1359 QUIET RIVER AVE.

| | |
|---|---|
| Prox. to Subject | 0.40 miles |
| Sale Price | 878,000 |
| Gross Living Area | 5,037 |
| Total Rooms | 15 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.5 |
| Location | SIMILAR |
| View | RESIDENTIAL |
| Site | 10,890 SQ.FT |
| Quality | AVERAGE |
| Age | 4 |

## Listing Photo Page

| | |
|---|---|
| Borrower | JOSEPH YAKUBIK |
| Property Address | 1448 MACDONALD RANCH DRIVE |
| City HENDERSON | County CLARK    State NV    Zip Code 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC |



### Listing 1
1377 ENCHANTED RIVER DR.
Proximity to Subject 0.31 miles
List Price 1,085,000
Days on Market 148
Gross Living Area 5,555
Total Rooms 14
Total Bedrooms 5
Total Bathrooms 4.5
Age/Year Built 3



### Listing 2
1373 RIVER SPEY AVE.
Proximity to Subject 0.30 miles
List Price 899,900
Days on Market 225
Gross Living Area 5,555
Total Rooms 14
Total Bedrooms 5
Total Bathrooms 4.5
Age/Year Built 3



### Listing 3
1385 ENCHANTED RIVER DR.
Proximity to Subject 0.29 miles
List Price 784,900
Days on Market 291
Gross Living Area 5,224
Total Rooms 13
Total Bedrooms 4
Total Bathrooms 5.5
Age/Year Built 3

| Borrower/Client    JOSEPH YAKUBIK | | | |
| Property Address   1448 MACDONALD RANCH DRIVE | | | |
| City   HENDERSON | County  CLARK | State  NV | Zip Code  89012-7247 |
| Lender   SAXON MORTGAGE SERVICES, INC. | | | |

A WALK-THROUGH INSPECTION WAS DONE BY THE APPRAISER. IF NOTED IN THIS REPORT THAT THE
SUBJECT HAS ANY CRAWLSPACE AREA, IT SHOULD BE MADE CLEAR THAT NO COMPLETE INSPECTION
WAS MADE OF THE CRAWLSPACE AREA.  AS APPRAISERS, WE ARE NOT QUALIFIED TO RENDER
OPINIONS AS TO THE STRUCTURAL INTEGRITY NOR THE QUALITY OF THE MECHANICAL SYSTEMS OF
ANY PROPERTY. ALSO, WE ARE NOT LICENSED PEST INSPECTORS.  THESE AREAS GO BEYOND THE
SCOPE OF OUR EXPERTISE.  APPRAISER IS NOT LIABLE FOR ANY STRUCTURAL OR MECHANICAL
DEFICIENCIES, IF ANY.

THE SUBJECT PROPERTY IS LOCATED IN AN AREA OF PRIMARILY OWNER-OCCUPIED SINGLE FAMILY
RESIDENCES.    DATA IS SPARSE AND NOT CONSISTENT OR RELIABLE REGARDING SIMILAR
PROPERTIES USED AS RENTALS. THEREFORE,  THE INCOME APPROACH WAS NOT USED IN THIS
REPORT.

THERE WAS NO CURRENT TITLE INSURANCE POLICY FURNISHED TO THE APPRAISER. THEREFORE,
NO INFORMATION REGARDING SPECIAL ASSESSMENTS, IF ANY, WAS AVAILABLE.

THE PURPOSE OF THIS APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY
FOR A FEDERALLY RELATED MORTGAGE  LOAN.  THIS APPRAISAL IS FOR MORTGAGE PURPOSES
ONLY. ANY RELEASE OF THIS REPORT MUST INCLUDE THE ENTIRE APPRAISAL REPORT.

IT IS NOT COMMON IN THIS AREA FOR APPRAISERS TO BE FURNISHED WITH A CURRENT SURVEY, AS
THEY ARE NORMALLY ORDERED AFTER LOAN APPROVAL.  ANY INFORMATION IN THIS REPORT
REGARDING THE SITE WAS TAKEN FROM ASSESSOR'S RECORDS OR AN OLD SURVEY IF ONE BECAME
AVAILABLE. A NEW SURVEY SHOULD BE OBTAINED THAT SHOULD SHOW BASICALLY THE SAME LAND
SIZE AND OR LOT DIMENSIONS AND LEGAL DESCRIPTION AS FURNISHED BY THE ASSESSOR AND NOT
REVEAL ANY UNAPPARENT EASEMENTS OR ENCROACHMENTS.

THIS APPRAISAL REPORT IS A SUMMARY APPRAISAL REPORT.

ADDITIONAL CERTIFICATION:  THE APPRAISER FURTHER CERTIFIES AND AGREES THAT:

1.    TO THE BEST OF MY KNOWLEDGE AND BELIEF, THE REPORTED ANALYSIS, OPINIONS AND
CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED, IN CONFORMITY  WITH
THE REQUIREMENTS OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE
(USPAP),  EXCEPT THAT THE DEPARTURE PROVISION OF USPAP DOES NOT APPLY,  AND THE
STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE OF THE APPRAISAL INSTITUTE.

IF DIGITAL SIGNATURES ARE USED IN THIS REPORT THEY REPRESENT THE SIGNATURE OF THE
APPRAISER INDICATED BELOW.

IF DIGITAL PHOTOS ARE USED IN THIS REPORT THEY HAVE NOT BEEN ALTERED IN ANY WAY.

ELECTRONIC/DIGITAL SIGNATURES HAVE BEEN USED.  THIS HAS BEEN RULED ACCEPTABLE
APPRAISAL PRACTICE BY USPAP.  ALL GUIDELINES IN THE USE OF DIGITAL SIGNATURES WERE
ADHERED TO BY USPAP STANDARDS REGARDING SECURITY PROVISIONS AND AUTHORIZED RELEASE
OF SIGNATURES PRESENTED.
• **URAR : Neighborhood - Boundaries**
THE SUBJECT IS LOCATED IN THE MASTER PLANNED COMMUNITY OF THE "FOOTHILLS OF
MACDONALD RANCH". THE COMMUNITY WAS BUILT AROUND A GOLF COURSE ON AN ELEVATED
HILLSIDE SOUTHEAST OF LAS VEGAS.  THE NEIGHBORHOOD APPEARS TO BE BOUND BY THE 215
BELTWAY TO THE NORTH, GREEN VALLEY PARK WAY TO THE WEST, AND MOUNTAIN RANGES TO THE
SOUTH AND EAST. THE SUBJECT IS LOCATED WITHIN 2 MILES OF SHOPPING, SCHOOLS AND OTHER
AMENITIES.  THERE PARKS AND OTHER RECREATION FACILITIES IN THE AREA AS WELL.
EMPLOYMENT STABILITY IS GOOD AND WELL ABOVE THE NATIONAL AVERAGES. THE
NEIGHBORHOOD IS APPROXIMATELY 20 MINUTES FROM DOWNTOWN LAS VEGAS AND 15 MINUTES
FROM THE LAS VEGAS STRIP WHICH ARE BOTH MAJOR EMPLOYMENT CENTERS.

HOWARD GROUP APPRAISAL (800) 492-2191    File No. 10019GJH Page #20

| Borrower JOSEPH YAKUBIK | | | | File No. 10019GJH |
| Property Address 1448 MACDONALD RANCH DRIVE | | | | |
| City HENDERSON | County CLARK | | State NV | Zip Code 89012-7247 |
| Lender SAXON MORTGAGE SERVICES, INC | | | | |

## PROPERTY HISTORY OF SUBJECT PROPERTY

In developing a real property appraisal, when the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:

(a) analyze all agreements of sale, options, or listings of the subject property current as of the effective date of the appraisal.
(b) analyze all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.

The appraiser has attempted to obtain specific information on the subject property with the following findings:

☒ The subject property has had no change of ownership in the past three (3) years.

☐ The subject property has had no change of ownership in the past five (5) years.

☐ The subject property is currently under contract. Details of the pending purchase are summarized below.

☐ The subject property is currently offered for sale: The listing price is $ _____

☐ The subject property has been sold in the past three (3) year period. Details of the previous sale(s) are disclosed below.

| Sale/Recording Date | Sales Price | List/Asking Price | Grantor/Grantee | Data Source |
|---|---|---|---|---|
| 01/01/2004 | 410,000 | N/A | LAND PURCHASE | ASSESSOR/OWNER |
| | | | | |
| | | | | |
| | | | | |

☐ The subject property is proposed construction and is not currently being offered.

☐ A previous sales history of the subject property could not be obtained by the appraiser in the normal course of business.

Comments:
THE OWNER BUILT THE SUBJECT NEW IN 2007.

# APPRAISER LICENSE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

NOT TRANSFERABLE                    **REAL ESTATE DIVISION**                    NOT TRANSFERABLE

This is to Certify That: **GLENN J HOWARD**                    License Number: A.0007090-RES

Is duly authorized to act as a LICENSED RESIDENTIAL APPRAISER from the issue date to the expiration date at the business address stated here in, unless the license is sooner revoked, cancelled, withdrawn, or invalidated.

Issue Date:  January 02, 2009                    Expire Date:  December 31, 2010

In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in it by Chapter 645C of the Nevada Revised Statues, has caused this license to be issued with its Seal printed thereon. This license must be conspicuously displayed in place of business.

FOR:    HOWARD GROUP APPRAISALS            **REAL ESTATE DIVISION**
        1429 MINUET ST
        HENDERSON, IN  89052

                                    ANN M McDERMOTT
                                    *Administrator*

## Location Map

| Borrower/Client | JOSEPH YAKUBIK | | | | |
|---|---|---|---|---|---|
| Property Address | 1448 MACDONALD RANCH DRIVE | | | | |
| City | HENDERSON | County | CLARK | State NV | Zip Code 89012-7247 |
| Lender | SAXON MORTGAGE SERVICES, INC. | | | | |



## Supplemental Addendum

File No. 10019GJH

| Borrower/Client  JOSEPH YAKUBIK | | | |
|---|---|---|---|
| Property Address 1448 MACDONALD RANCH DRIVE | | | |
| City  HENDERSON | County  CLARK | State  NV | Zip Code 89012-7247 |
| Lender  SAXON MORTGAGE SERVICES, INC. | | | |

"ESTIMATE OF MARKETING VALUE BASED ON A CLIENT -IMPOSED RESTRICTED MARKET EXPOSURE TIME OF 90 DAYS, IS $950,000.00."

***FOR THIS APPRAISAL REPORT THE TOTAL COMPENSATION PAID TO THE APPRAISER IS $225.00, AND THE TOTAL COMPENSATION RETAINED BY CLEAR CAPITAL IS $170.00***PURSUANT TO NEVADA REGULATION R090-91

Signature _Glenn J. Howard_          Signature _____
Name GLENN J. HOWARD                  Name _____
Date Signed  June 25, 2010            Date Signed _____
State Certification # _____   State ___   State Certification # _____   State ___
Or State License #  A.0007090-RES   State NV   Or State License # _____   State ___

HOWARD GROUP APPRAISALS (260)492-2191
Form TADD2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**ClearCapital**

**I. Addendum: Fee Disclosure**

| | |
|---|---|
| **Property ID** | 5103030 |
| **Loan #** | 2000543663 |
| **Borrower** | Josoph W Yakubik |
| **Property Address** | 1448 Macdonald Ranch Drive, Henderson, NV 89012 |
| **Appraiser Name** | Glenn Howard |
| **Appraiser Compensation** | $225 |
| **Appraisal Management Fee** | $170 |
| (Includes Sales & Marketing, Quality Assurance, Panel Administration, Order Management, Data Assistance, Technical & Software Support, Record Retention & Dispute Resolution) | |
| **Total Fee** | $395 |

Thank you for doing business with CLEARCAPITAL.COM, Inc.

**CLEARCAPITAL.COM, Inc
10875 PIONEER TRAIL
TRUCKEE, CA 96161**

**II. HVCC Certificate of Compliance**

ClearCapital.com, Inc. (Clear Capital) implements the following Policies and Procedures in connection with the Home Valuation Code of Conduct (HVCC) and certifies that all aspects of applicable appraisal reports that are within its control or direction are completed in compliance with the HVCC.

1. Clear Capital will not influence, or attempt to influence, the development, reporting, result or review of an appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner; specifically, in connection herewith:

   a. Clear Capital will not withhold or threaten to withhold timely payment or partial payment for an appraisal report;

   b. Clear Capital will not withhold or threaten to withhold future business, demote or terminate an appraiser;

   c. Clear Capital will not promise future business, promotions, or increased compensation for an appraiser;

   d. Clear Capital will not condition future business or payment of an appraisal fee, salary or bonus on the appraiser arriving at a specific valuation;

   e. Clear Capital will not request an appraiser to provide an estimated, predetermined or desired valuation, or comparable sales, at any time prior to the completion of an appraisal report;

   f. Clear Capital will not provide an anticipated, estimated, encouraged or desired value for a specific property to the appraiser, or a proposed or target loan amount to the borrower, but may provide a copy of the sales contract;

   g. Clear Capital will not provide stock or other benefits to an appraiser, appraiser company, or any entity related to the appraiser;

   h. Clear Capital will not allow the removal of an appraiser from a list of qualified appraisers or blacklisting an appraiser without notice or due process;

   i. Clear Capital will not order, obtain, issue or pay for a second or subsequent home appraisal or automated valuation model unless the initial appraisal is demonstrably flawed or the second appraisal is ordered pursuant to stringent review, quality control or underwriting guidelines, as demonstrated by the customer;

   j. Clear Capital will not engage in any other act or practice that impairs an appraiser's ability to produce an independent, objective and impartial appraisal.

2. Clear Capital maintains written policies and procedures relating to its compliance with HVCC.

3. Clear Capital does not accept orders or payment for origination appraisals by mortgage brokers to the extent prohibited by HVCC.

4. Clear Capital has established a help line to receive appraiser comments, conflicts and complaints.

5. Clear Capital accepts orders only from individuals authorized by our customers as having the proper authority level to place orders, and will only deliver completed appraisal reports to individuals authorized by our customers as being permissible recipients of the reports.

6. Communications with appraisers by Clear Capital are limited to clarifications of assignment requirements, access information, and inquiries regarding status, requesting additional information or explanation regarding the basis of a valuation, correcting factual errors on the report, and other property related issues.

7. Clear Capital requires all appraisers to be licensed or certified by the state in which the property is located.

8. All personnel that receive orders, solicit appraisers and deliver results are knowledgeable and trained about appraising, appraisal reports, the Uniform Standards of Professional Appraisal Practice ("USPAP"), HVCC, appraisal regulations and enforcement and our internal systems.

9. Customer requested exclusion lists require a supplemental affirmation from the customer that the appraisers have been excluded in compliance with HVCC.

10. Clear Capital will report any areas of appraiser misconduct to its customer and as otherwise may be required by applicable laws and regulations.

11. Clear Capital will document any violations of its HVCC policies and procedures by its employees.

TIFFANY & BOSCO, PA
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787

Wells Fargo Bank, N.A.
10-71050

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK Case No.: 09-24688-lbr |
| Joseph William Yakubik and Darcie Ann Yakubik | Date: 3/30/2011<br>Time: 2:00 pm |
| | Chapter 11 |
| Debtors. | |

## <u>CERTIFICATE OF SERVICE</u>

1. On __3|17|2011__ I served the following documents(s):

OPPOSITION TO MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY
RIGHTS OF CREDITORS PURSUANT TO 11 U.S.C. 506 (A)

2. I served the above-named document(s) by the following means to the persons as listed below:

X  **a. ECF System**

    Timothy Cory
    tim.cory@corylaw.us
    Attorney for Debtors

X  **b. United States mail, postage fully prepaid:**

    Timothy Cory
    8831 W. Sahara Ave.
    Lakes Business Park
    Las Vegas, NV 89117
    Attorney for Debtors

Joseph William Yakubik and Darcie Ann Yakubik
PO Box 530778
Henderson, NV  89053
Debtors

□ **c. Personal Service**

I personally delivered the document(s) to the persons at these addresses:

□ 1.    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

□ 2.    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

□ **d. By direct mail**

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

□ **e. By fax transmission**

Based upon the written assignment of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

□ **f. By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 17th day of March, 2011.

By: Jannie Miler